# Kittera's Estate.

1. The Orphans' Court have power, under the Act of 13th April, 1840, relating to Orphans' Courts, *on the application of a creditor*, to appoint an auditor to make distribution of assets in the hands of the administrator which are insufficient to pay all the debts of a decedent.

2. On the hearing before the auditor, each creditor has a right to appear and be heard. The administrator has not the control of the proceeding, nor is he responsible for errors in the distribution. Where the fund is not sufficient to pay all of the creditors, any creditor has the right to oppose any other claimant by showing payment, or that the claim is barred, or that its lien has expired, if claimed out of the proceeds of real estate; or may show any other defence existing to its payment.

3. In the case of distribution of proceeds of sale of a decedent's real estate, after record liens existing in his lifetime have been paid, a debt whose lien under the Act of 24th February, 1834, has been continued by suit against the executor and devisees of the real estate within five years after the death of the decedent, is entitled to be paid in preference to general debts the statutory lien of which has expired.

4. The statutory lien of a debt against the estate of a decedent is continued by suit against the executor alone, though the heirs or devisees are not made parties to it.

5. Though the argument in this court, on an appeal from the decree of the Orphans' Court, should be limited to a review of the decision of the court below on the facts and exceptions there stated; yet, by the 4th section of the Act of 14th April, 1835, the Supreme Court possesses a legal discretionary power over the subject on appeal, and may refer the case to auditors *de novo,* when in its opinion the justice of the case requires it; the auditors to report to this court for a final decree.

6. A creditor of the decedent who has received from the executor an assignment of claims of the estate, as *collateral* security (there being no evidence of insolvency at the time of the assignment), is not bound to reassign them before receiving a dividend less than half the amount of his claim out of the assets in the hands of the administrator *de bonis non.* This can be required only on payment or tender to the claimant of the whole amount due to him.

THIS was an appeal from the decree of the Orphans' Court, Philadelphia, upon the report of an auditor appointed to audit and settle the account of Harry Conrad, administrator *de bonis non,* with the will annexed, of Thomas Kittera, Esq., deceased, and to report distribution of the assets.

The testator died on the 9th June, 1839.

The fund for distribution exceeding $8000, arose out of the sheriff's sale of real estate of the decedent, situate at the corner of 2d and Pine streets, Philadelphia, sold by virtue of proceedings on a mortgage executed by Mr. Kittera. After paying the mortgage debt, which was the only specific lien on it, the balance, amounting to $8503.27, was on the 9th March, 1846, paid to the administrator *de bonis non* by order of the District Court, he giving bond for its distribution.

The residue of the decedent's real estate had been previously sold, either by the executrix or the sheriff, except his interest in the "Woodlands" in West Philadelphia.

[Kittera's Estate.]

On 17th January, 1834, Thomas Mitchell, the owner of the tract of land in West Philadelphia known as the woodlands, conveyed three undivided eighth parts of it to Thomas Kittera in fee, by an unrecorded deed; the consideration stated therein to be $15,000. The Woodlands Cemetery Company was incorporated by Act of 13th April, 1840, with power to purchase 75 acres of this estate for a cemetery.

By another unrecorded deed, Mrs. Ann Kittera, executrix of the will of Thomas Kittera, deceased, for the nominal consideration of $41,437.50 therein named, reconveyed to Thomas Mitchell in fee the three-eighths which he had conveyed to Thomas Kittera. No money was paid, the reconveyance being made to enable Mitchell, as the sole holder, to divide the estate into shares, in which it was intended to set off the interest of decedent's estate therein.    Mitchell proceeded to convey the whole estate in trust for cemetery purposes, creating thirty equal shares, the par value fixed for each being $4500.    Seven of these shares were passed over to Thomas Kittera's estate, and two or three more were claimed by his representatives as against Thomas Mitchell.

Each share was subdivided into lesser shares or certificates of eighteen to each share, and the par value of each certificate was $250.    It was in distinct proof, that $200 was the regular and ordinary cash market value of single shares, and that some had been sold higher, though if a great quantity were forced into the market at once, they might not bring over $150, but would be. cheap at that rate.    By an instrument of writing, dated January 1, 1842, the executrix assigned to Geo. Strobel four bonds representing five shares or ninety certificates in the company, *and on the surrender of those bonds, he received from the company a transfer to him as executor of five larger shares or ninety certificates,* the aggregate par value whereof was $22,500.    These ninety certificates were receipted for on the books of the company, by Strobel's attorney, and also by Strobel himself, on May 9, 1848. Afterwards, to wit, on May 17, 1844, George Strobel, surviving executor of Anthony Hearn, deceased, commenced suit in the District Court to June term, 1844, No. 78, against the administrator and heirs and devisees of the decedent, and on 16th January, 1846, he obtained a verdict for $21,358 *de terris et assets quando acciderint.*

Suit was also brought in favor of James Barr, as administrator to March Term, 1845, against the administrator and devisees, and judgment obtained.    The claim was for $651, with interest.

Also, suit was brought by the executors of the will of Laussat, to June, 1843, against the executor of the will of decedent.    The administrator of the estate was afterwards substituted.    The objection taken on the part of Strobel to this claim was, that none

of the devisees were joined with the personal representative in the suit, and that therefore the lien on the land was not continued. The auditor decided that this objection was insufficient to exclude the claim.

Some of the creditors had not brought suit, and the counsel of Strobel *pleaded the statute of limitations against their claims against the estate.*

This position was contested by the other creditors, who contended, that as among themselves all claiming the proceeds of the estate, no suit at all was necessary, much less any within five years, and furthermore, that the whole course of Mr. Strobel was contrary to equity and could not be sustained; that the executrix had no right to pledge to him the Woodland Cemetery certificates as security for the payment of his debt, to the prejudice of the other creditors, and that he should be compelled to surrender them and come in with the others, or be charged with them at their full par value; and that the limitation acts were of no effect against their own claim on the fund. The auditor decided adversely to the position taken on behalf of Strobel, and considering that he held the certificates contrary to equity, he decided that he was not entitled to come in on the present fund till the other creditors are fully paid, as the aggregate par value of the certificates is $22,500, which he received as of January 1, 1842, while the amount due to him was four years afterwards ascertained to be but $21,358.62.

Some other claims against the estate were not contested except on the point of being barred as taken by the counsel of Strobel; but neither the administrator or any of the devisees set up the statute of limitation, or any other plea against their validity, and they were duly proved as follows, to wit:

1. Robert Looney, a book account for plumber's work $134.07, with interest from May 18, 1840.

2. To T. & J. W. Johnson, on book account, $48.00, with interest, from January 1, 1840.

3. Charles Ingersoll and Joseph A. Clay, executors of Alfred Laussat, deceased, on judgment against H. Conrad, administrator. 1. In suit brought in District Court to June Term, 1843, No. 900, $127.55, with interest from October 21, 1846, and cost of suit. This suit was commenced within five years from Mr. Kittera's death, the executrix being sued and the administrator substituted at her decease. Objection was taken on the part of Strobel to the allowance of this claim, as has been before stated.

4. James Barr, *administrator d. b. n. c. t. a.* of Anthony Hearn, deceased, on judgment against the administrator and devisees, in suit brought in the District Court, March Term, 1845, No. 175, for $651, with interest from February 4, 1846, and costs of suit.

[Kittera's Estate.]

5. John and Ann Cottinger as residuary legatees of Elizabeth Cottinger, deceased, of whose will the decedent was executor, and was indebted in a sum to be held by him in trust for John and Ann Cottinger.

An office copy of the account was annexed, showing
a balance in the hands of the administrator of  -  - $7060.54
  From September 9, 1846, interest till February 15,
    1850,   -   -   -   -   -   -   - 1419.26
                                             ―――――――
Amount February 15, 1850,   -   -   -   - - $8479.80
Counsel fees and auditors fees, costs and expenses,  - 412.00
                                             ―――――――
Balance for further distribution,   -   -   - - $8067.80

The auditor reported in favor of Robert Looney, $212.47; T. & J. W. Johnson, $77.10. The executors of the will of Laussatt, $167.62; to J. Barr, administrator, &c., on his judgment, $824.15; for use of John and Ann Cottinger, $1805.61; and a credit to the administrator for payment on account of the last mentioned claim, $30.22, amounting in all to $3117.47. That amount being deducted from the $8067.80, and $500 being left in the hands of the administrator, as a fund to pay expenses of suits pending for property claimed for the estate, left a balance of $4450.33, which he awarded to Strobel, surviving executor, &c., on account of his judgment.

The receipt of Strobel referred to in the case was as follows:—

"I acknowledge to have received from the Woodlands Cemetery Company, the following company certificates for shares in said cemetery, to wit: number 55 to 72 inclusive, 73 to 90 inclusive, and 433 to 468 inclusive, being the shares appertaining to the five-thirtieth shares in the Woodlands estate, issued by the trustees to Samuel Edwards, Philip M. Price, and Eli K. Price, and by them assigned in pledge to Mrs. Ann Kittera, executrix of Thomas Kittera, deceased, and by her assigned to me by deed of assignment, dated January 1, 1842, intended to be recorded.

(Signed),                                       G. STROBEL.
Philadelphia, May 19, 1848."

The 24th section of the Act of 24th February, 1834, relative to executors and administrators, provides that "no debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien on the real estate of such decedent longer than five years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his heirs, executors, or administrators, within the period of five years after his decease, &c."

[Kittera's Estate.]

Various exceptions to the report of the auditor were filed:—One was to the effect that the auditor reported in favor of the payment in full to the creditors hereinbefore named, and the balance to Strobel, executor, &c.

Another was, because he reported that Strobel, as executor, should be paid a portion of his claim from the fund, without accounting for the securities he had received, which were of greater amount than the debt.

On the part of Strobel, it was, *inter alia*, excepted, that the auditor did not distribute the whole of the fund to his claim.

PARSONS, J., delivered an opinion, in which it was declared that Strobel, by accepting an assignment from the executrix of claims to the amount of his debt, was not entitled in law or equity to demand the fund in question, to the exclusion of other creditors, without re-assigning to the administrator the property he held as collateral security; and that he could not till then raise objection to the claims of the creditors. When he took the assignment from the executrix, he knew that she held the claims in trust for the creditors until their debts were paid; and as to them, he must be charged with the value of the claims assigned, as stated in the assignment. That as he treated the claims assigned as his own, he claimed them as owner; and as to the other creditors, he is to be considered as paid.

The court ordered a part of the report to be set aside, and decreed another distribution than that reported by the auditor; in which $2350 was decreed to be paid to the executors of the will of Mrs. Kittera, for a debt alleged to be paid by the latter, with interest thereon. Other exceptions were dismissed.

An appeal was taken by Strobel, and security for costs given.

Exceptions were filed on the part of Strobel:—1. To the decree in favor of the executrix of the will of Mrs. Kittera. 2. To the allowance of the claims of Looney, T. & J. W. Johnson, Laussatt's executors, J. P. Barr, as administrator, and to trustee of A. & J. Cottinger, &c. 3. That the court erred in confirming the auditor's report as to counsel fees, and to the sum of $500 to be retained, &c. 4. That the auditor erred in not reporting the entire fund to Strobel.

The case was argued by *W. L. Hirst*, with whom was *J. C. Van Dyke*, for Strobel the appellant.

The funds in the hands of the accountant are the proceeds of real estate.

The said real estate was excepted out of the power of sale vested in the testator's executor, and had vested in his devisees absolutely.

The testator died on the 9th June, 1839. No suit against the estate was brought by R. Looney, nor by T. & J. W. Johnson,

[Kittera's Estate.]

nor by the Cottingers, nor by Ann Kittera's executor. Suit was brought by A. Laussat's executors, but the devisees were not made parties. A suit was brought by George Strobel, on the 17th May, 1844, against the accountant *and all the devisees;* and verdict obtained on the 16th January, 1846, for $21,358. Judgment was entered on the verdict, April 3, 1848. The real estate of the testator was sold by the sheriff under a mortgage, in March, 1845, and the sheriff paid over the surplus to the accountant, $8503.27, on the 9th March, 1846, and that sum is the only item of debit in the account now under investigation. The accountant received the fund by virtue of the 33d section of the Act of February 24, 1834, *Purdon*, p. 477. By that section the money is to be distributed, as the real estate, of which it is the proceeds, would have been.

As to the second assignment: the appellant denies that these creditors can, in any event, be admitted to the fund, upon principle or authority. The debts of two of them, Looney and Johnson, date from 1840, and were never put in suit, nor was Mary Williams' debt. The claim of Laussat's estate was put in suit, but the devisees were not made parties. The Cottinger debt is a balance of the testator's account as executor, confirmed in the Orphans' Court, July 5, 1833, and no transcript was ever filed in the Common Pleas to bind his real estate, according to the provisions of the Act of 29th March, 1832, relating to Orphans' Courts; *Purdon*, p. 890. "The transcript of a balance due by an executor or administrator, must be filed in his lifetime; if filed after his death it creates no lien;" Rowland v. Harbaugh, 5 *Watts* 365. The appellant has complied with the requisitions of the Act intended for the repose of estates. He brought his suit on the 17th May, 1844, and made all the devisees parties to it. They appeared and took defence, joined issue, and a verdict and judgment in his favor have concluded them finally: Himes v. Jacobs, 1 *Pa. R.* 152; Penn v. Hamilton, 2 *Watts* 53; Murphy's Appeal, 8 *W. & Ser.* 165; 9 *Barr* 249; *Id.* 265.

He contended that there was no evidence that Strobel received the Woodland Cemetery shares *as payment*. The assignment was a mere mortgage without power to sell, in terms expressed in the paper.

He also objected to commissions and counsel fees.

*Perkins, Williams, Husbands, Chapron, E. Ingersoll* and *Smith*, for appellees.—It was *inter alia* alleged that as to the claim by Barr, as administrator, it is stated in the report of the auditor, that the devisees *were made parties to the action* in which Barr obtained judgment.

The claim of Strobel was objected to.—1. Because if he has appropriated the property in satisfaction of his debt, the debt is

[Kittera's Estate.]

of course extinguished, and he has no claim whatever. May 9, 1848, he converted it to his own use, *by receiving the ninety certificates.*

2. If he has not in point of fact applied the pledge in satisfaction of his debt, he has two funds to resort to, while the other creditors have but the one in accountant's hands; and although he has not as yet received satisfaction out of either, a court of equity will either throw him for satisfaction upon the fund which can be affected by him only, that the fund in accountant's hands may be clear for those creditors who can have access to it only: *Story's Eq.*, vol. 1, section 563; Sagittary *v.* Hyde, 1 *Vern.* 455; Lanoy *v.* Duke of Athol, 2 *Atk.* 446; Pollexfen *v.* Moore, 3 *Atk.* 272; Att. Gen. *v.* Tyndall, *Ambler R.* 615; Sproule *v.* Pryor, 8 *Sim.* 189; or it will put him to his election between the one fund or the other, and if he resorts to the latter, it will decree satisfaction, *pro tanto,* to the other creditors out of the other fund: *Story's Eq.*, vol. 1, section 561, 563, 633, and note 3, 634, 558; Aldrich *v.* Cooper, 8 *Ves.* 389, 394, 395; Trimmer *v.* Bayne, 9 *Ves.* 210, 211; Cowden's Estate, 1 *State R.* 273.

The judgment in favor of Strobel, though it may conclude the parties to it, cannot affect creditors who were not parties to it, in a contest for the fund in dispute.

The opinion of the court was delivered February 26, by

LEWIS, J.—By the Act of 29th March, 1832, the Orphans' Court is made a court of record, with all the incidents of a court of record at common law, and its jurisdiction is declared to extend, *inter alia,* "to the removal and discharge of executors and administrators, the settlement of their accounts, and the distribution of the assets or surplusage of the estates of decedents, after such settlement, among *creditors* or others interested." By the 19th section of the same act, auditors are required to be appointed to "adjust the rates and proportions among the respective *creditors,* where there shall not be sufficient assets to pay all the debts." By the Act of 13th April, 1840, it is made the duty of the Orphans' Court, to appoint auditors for the purposes of distribution "on the application of *any creditor,*" as they were before "authorized to do on the application of the *executor* or *administrator.*" And on the application of any *legatee, heir,* or *other person interested in the distribution of the estate of any decedent,* the court is directed "to appoint one or more auditors to make distribution of such estate in the hands of any executors or administrators to and among *the persons entitled to the same.*"

It is clear, from these statutory provisions, that the Orphans' Court is clothed with authority to distribute estates of decedents in the hands of executors or administrators, "*among the persons entitled to the same,*" and that by these general terms, as well as

by express words, the legislature embraces "*creditors*" as well as "heirs," next of kin and "legatees." The right of each to be heard in support of his claim, and in opposition to every claimant who interferes with it, is necessarily involved in the right to demand payment out of the fund. Each creditor or claimant has a right to appear and to be heard, so far as may be necessary for the protection of his own interest; and of this proceeding the administrator has not the control, nor is he responsible for errors in the distribution so decreed. At a time when the statute of limitations was viewed with disfavor, it was held that an executor or administrator was not bound to plead it. This rule was only appliable to actions in which the personal representative of the decedent was intrusted with the management of the defence, and in which the pleading was necessarily regulated by his own discretion. It has no place in a proceeding before the Orphans' Court, where the parties beneficially entitled to the fund are recognised as having a standing in court, and must, as a consequence of that condition, be permitted to protect their respective interests in their own way. It follows that where the fund is not sufficient to pay all, each creditor has a right to oppose any other claimant, by showing payment of the debt; that it is barred by the statute of limitations; that the lien has expired (if the claim be upon a fund arising from the sale of real estate); or that any other defence exists against it; and these rights do not depend upon the will of the personal representative of the decedent. The power to decide all questions necessary to a proper distribution of the fund follows the power of distribution, and rests in the Orphans' Court, as a necessary incident to the jurisdiction. That court is as competent as the Common Pleas to determine all questions of *law*, as the judges of both courts are the same; and the Orphans' Court has ample authority "to send an issue to the Common Pleas for the trial of *facts* by a jury." (Section 45, Act 29th March, 1832.) In exercising this jurisdiction, the Orphans' Court adopts generally the principles and practice which regulate the Court of Chancery in its jurisdiction over the same subject: 2 *Hare R.* 310 ; 1 *Story's Eq.* s. 547 ; 1 *Cr. & Phill.* 48.

The fund for distribution in this case arises from the judicial sale of real estate, and is to be distributed among creditors having liens upon it at the time of the sale. The debts of record having been discharged, we have before us only that class of creditors whose liens originated with the death of Thomas Kittera. By Act of Assembly these liens are limited to five years from the death of the person indebted, unless the lien be continued by suit or other proceeding prescribed by the statute. The lien of the debt claimed by the executor of Anthony Hearn, deceased, has been preserved by a suit, in the manner and within the time required by the Act. The same may be said of the debt claimed

by Alfred Laussat's executors. This last-mentioned suit was brought against the executor of Thomas Kittera, deceased, without making the heirs or devisees parties thereto. But it seems to have been fully settled, that the lien of a debt may be continued against the estate of a decedent "by the commencement and due prosecution of a suit either against the heirs, or the executors, or the administrators, as the case may be, within the period of five years after the decease of the debtor:" *Murphy's Appeal*, 8 *W. & Ser.* 170.

These are the only two creditors whose liens have been continued. All the others permitted their liens to expire, by neglecting to comply with the provisions required by law; and there is nothing in the nature of their claims to take their cases out of the statute which limits their liens respectively to the period of five years.

But it is objected to the claim of George Strobel, executor of Anthony Hearn, deceased, that he holds as collateral security certain shares in the Woodlands Cemetery, alleged to be of greater value than his debt against the decedent, and that he "refuses to surrender them." It was said by the auditor that he "holds them contrary to equity," and by the court below that "he could not demand payment out of the present fund *without re-assigning all the property which he held as collateral security for his claim.*" The auditor states this creditor's claim to be $21,358.62. The judge who made the decree below states it at $18,673. But the whole fund in court for distribution is only $8067.80. So that a re-assignment of his collaterals, as a preliminary to making claim upon this fund, would be a release of his securities upon payment of less than one-half of his debt. There is no equity in any such demand upon him. A re-assignment of securities, rightfully placed in his hands, can only be demanded upon payment, or a tender of payment, of the whole debt and interest which they were deposited and assigned to secure. It is not pretended that any such tender has been made. This claim is a fair debt against the estate of Thomas Kittera, deceased, and the collaterals are assets of that estate, assigned to secure the payment of it, without any evidence of insolvency at the time of the assignment. It was not an application of the assets of the testator to pay or receive the individual debt of the executor, but security provided out of the assets bound for the payment of the debt. The receipt of 19th May, 1848, given for the certificates, is in accordance with the provisions contained in the assignment of these securities to the creditor, and is not a conversion of them to his own use. No fact is reported by the auditor tending to show that this creditor's original right to these collaterals was invalid, or that he has since sold or converted them to his own use. This refusal to surrender them, on receiving less than one-half of his just claim, is certainly no evidence of a conversion. Nor can his refusal to produce

[Kittera's Estate.]

them, in a proceeding where his claim is founded altogether upon the original debt, and not upon the collaterals, be construed to have this effect, unless the demand be accompanied with an offer to do equity on the part of the debtor. But if it be alleged that the creditor has realized his debt, by the sale of the collaterals since the decree in the court below, this court, on a proper application for the purpose, will appoint auditors to take testimony and report the facts in order that "right and justice" may be done. And although the inquiry here, upon an appeal, is properly confined to a review of the decision of the court below upon the facts there presented, and upon the exceptions brought to the notice of that court, there is nevertheless a discretionary power, conferred by the 4th section of the Act of 14th April, 1835, to refer the case to auditors *de novo*, when, in the opinion of this court, the justice of the case requires such a reference. This discretion is not an arbitrary discretion, but should be regulated by the rules which govern courts of common law in granting new trials upon newly discovered evidence.

It is ordered that the decree of the court below be reversed, and that the fund in the hands of Harry Conrad, administrator *de bonis non*, &c., of Thomas Kittera, deceased, be paid *pro rata* upon the respective claims of George Strobel, executor of Anthony Hearn, deceased, and Charles Ingersoll and Joseph A. Clay, executors of Alfred Laussat, deceased.

The prothonotary is directed to make the necessary calculations, and to report the same to this court for a final decree in the premises.