Estate of James L. Claghorn, deceased. Appeal of the Commercial National Bank of Pennsylvania.

*Statute of limitations—Decedents' estates—Executors and administrators.*

The recognition by the personal representative of a decedent of a debt of the decedent barred by the statute of limitations by part payment thereon is but a new promise on which the representative must be sued personally. He is not answerable in his representative capacity for any cause of action not created by the decedent himself. If he revives the cause of action by a new promise, then the promise is essentially a new contract, which alone can be relied on to sustain the action.

Where a creditor of a decedent has been induced by the executors who are the sole legatees of the decedent to delay pressing his claim for more than six years, another creditor may plead the statute of limitations against the claim, although the executors may be estopped from pleading it: McWilliams's Appeal, 117 Pa. 111, distinguished.

*Fraud—Decedents' estates—Statute of limitations.*

A decedent in his lifetime received money from K. to be invested, and he, in his lifetime and his executors after his death, repeatedly, in the most explicit terms, represented to K. that her money was invested, and informed her of the special securities taken in her name. These statements were all false. K. did not discover the fraud until more than six years had expired from decedent's death. *Held*, that no other creditor of the decedent could successfully interpose the statute as against K., because her claim against the estate dated only from her discovery of the fraud.

Argued Jan. 22, 1897. Appeal, No. 368, Jan. T., 1896, by the Commercial National Bank, from decree of O. C. Phila. Co.,

Oct. T., 1894, No. 261, dismissing exceptions to adjudication. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Affirmed.

Exceptions to adjudication.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*John Weaver* and *John G. Johnson,* with them *John Sparhawk, Jr.,* for appellant.—An executor or administrator sued in his representative capacity for a debt due by decedent may plead the statute of limitations as a bar to the action, although such executor or administrator may have made such an acknowledgment of a debt as in the case of a person sued for his own debt would be sufficient to take the case out of the statute: Fritz v. Thomas, 1 Wharton, 66 ; Reynolds v. Hamilton, 7 Watts, 420 ; Forney v. Benedict, 5 Pa. 225 ; Steel v. Steel, 12 Pa. 64 ; Light's Est., 136 Pa. 211. McWilliams's Appeal, 117 Pa. 111, is not in point.

It cannot be said the appellant, the Commercial National Bank, was party to any arrangement, or received any benefit from any indulgence of Mrs. Keller, or was party to her negligence in asserting any claim or making any demand upon the executors, and there is no doubt that a creditor can intervene and plead the statute : Hoch's App., 21 Pa. 280 ; Ritter's App., 23 Pa. 96 ; Kittera's Est., 17 Pa. 416.

This was not a trust exclusively cognizable in equity : App v. Driesbach, 2 Rawle, 287 ; Finney v. Cochran, 1 W. & S. 112 ; Zacharias v. Zacharias, 23 Pa. 452.

*Thomas H. Talbot,* with him *Isaac D. Yocum,* for appellee.— Only the personal representative of the decedent could set up the defense of the statute of limitations. He can do it or not in his discretion. If satisfied the claim is honest he "is not bound to plead the statute of limitations." If he refuse thus to plead "creditors have no more right to complain than to complain of like action by the debtor while living : " Woods v. Irwin, 141 Pa. 278 ; Yaw v. Kerr, 47 Pa. 335 ; Forney v. Benedict, 5 Pa. 225 ; Wesner v. Stein, 97 Pa. 322.

Suppose the statute did run, when did it begin to run? As to Mrs. Keller's choses in action, it is clear that the possession of James L. Claghorn, during his lifetime, and thereafter of his representatives, under her title, was her possession, and that no statute of limitations would run until her title was disclaimed; and that was not before 1895: Rush v. Barr, 1 Watts, 110; Johnson v. Ames, 11 Pick. 172.

No fraud committed against Mrs. Keller could set the statute in operation, so long as the fraud was concealed from her: Jones v. Conoway, 4 Yeates, 109.

This was a trust exclusively cognizable in equity: Davis v. Coburn, 128 Mass. 377; Childs v. Jordan, 106 Mass. 321; Day v. Roth, 18 N. Y. 448.

Mrs. Keller's cause of action began when she demanded of these executors a return of her funds and they neglected and refused to make such return: Girard Bank v. Bank of Penn Twp., 39 Pa. 92; Finkbone's App., 86 Pa. 368; McGough v. Jamison, 107 Pa. 336; Humphrey v. Nat. Bank, 113 Pa. 417; Campbell v. Floyd, 153 Pa. 84.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

James L. Claghorn, of Philadelphia, died on August 25, 1884, leaving to survive him a widow, Julia S. Claghorn, and one son, J. Raymond Claghorn, then past his majority. He left a will, of which he appointed his widow and son executors. At his death, he was possessed of a considerable estate, probably, at that time, if it had been turned into cash, more than sufficient to pay his debts. But settlement of the estate was delayed by his representatives; no account was filed until one was compelled by the orphans' court, April 5, 1895. This account was very confused and unintelligible; it indistinguishably blended principal and income, administration and distribution. The auditing judge ordered a restatement of it, which account was presented December 4, 1895. It was not much improvement on the first, yet, as all parties seemed to think it was the best that could be got, it was by their consent adopted as a basis for adjudication and distribution by the court. It showed a balance of principal in the hands of the executors, after deducting costs and counsel fees, of $21,962.58, to which was afterwards added a surcharge of $2,905 against J. Raymond Claghorn, one

of the executors. Two claims on this balance were adjudged sustained, one of $36,344.34, with interest from May 1, 1894, preferred by Mrs. Emma C. F. Keller; the other for $4,300, with interest from March 22, 1894, by the Commercial National Bank. To them the fund was awarded, pro rata. Exceptions were filed to the adjudication by both the bank and Mrs. Keller, each objecting to the allowance of the claim of the other. The exceptions, after argument, were overruled by Judge ASHMAN, and the adjudication confirmed. From that decree the bank appeals, alleging error in, 1. Not finding Mrs. Keller's claim was barred by the statute of limitations. 2. In finding as a fact that securities of Mrs. Keller in possession of testator were converted to his own use.

It appeared from the testimony that Mrs. Keller was an intimate friend of testator's wife, and had great confidence in the business capacity and integrity of her friend's husband; for some years before his death she had placed in his hands different sums of money, aggregating a large amount, for investment; these he reported to her as invested, specifying for the larger part the particular investments he had made in her name and for her account, and the income derived therefrom; frequent payments on account of alleged income were made to her, amounting to over $12,000, but the investments from which the income remittances came were not particularized in communications to her. And, although irregular, the remittances kept up from the father's death until about the year 1894. It does not appear just how long before the father's death these transactions commenced; as already noticed, James L. Claghorn died on August 25, 1884. Two letters to Mrs. Keller which his son testified were written by him at his father's direction were put in evidence. One dated April 7, 1881, is as follows:

"MY DEAR MRS. E. C. F. KELLER: The account stands, February 1, 1881: Cash in hand to J. L. Claghorn, fully secured, interest 6 per cent. per annum, $10,462.73; State Line & Sullivan Railroad bonds, 7 per cent. $19,000 at par, worth today $105; 86 shares Commercial National Bank at $67.50, $5,800; $70 asked. Pennsylvania bonds, $5,000; bond and mortgage, $2,000; ground rent, $1,200; loan on call, secured, 6 per cent., $5,000; aggregating $48,762.73. It is very diffi-

cult to get 6 per cent. and be secure. We have done the best
we could and feel you are secure. As soon as a good invest-
ment offers, father will invest the funds in his hands. Ten ·
thousand bonds were paid off last year is the reason the
amount in his hands is large. But you lose no interest, he
preferring to pay you 6 per cent., even if he does not realize
that much at present.

"Yours in great haste,

"RAYMOND."

The other is dated March 20, 1883, and is as follows:

"MY DEAR MRS. KELLER: I have now made up father's
accounts since July, 1882, and I find very little change in your
account; the investments are the same; the only difference is
the amount of cash on hand, in the hands of father bearing six
per cent., secured, which was July 1st, 1882, $10,054.01, instead
of $10,462.73; 85 shares Commercial Bank; 19,300 bonds State
Line & Sullivan Railroad; Pennsylvania Railroad, $5,000; bond
and mortgage, $2,000; ground rent, $1,200; loan on call, secured,
$5,000. If you should spend four or five hundred dollars a year
more of income for ten years, it would only amount to $5,000
or $4,000 in the aggregate. I do not see that any more could
be derived from investments than at present. You had better
be sure than take risks. I am going over to Boston on Sunday
night, and Annie, I think, will go along. In fact, I know she
will. Will stop at Brunswick. Look us up. Kindly drop note
when you will look in. Shall stay a day or so.

"Yours truly,

"RAYMOND."

March 2, 1891, seven years after testator's death, J. Raymond
Claghorn wrote a letter of which the following is a copy, to Mrs.
Keller:

"MY DEAR MRS. KELLER: The following is a full state-
ment of your account, with securities on hand, as it stood Jan-
uary 1, which is the date at which I have settled the accounts
of the estate. It has not varied of any consequence since then.
Hope you will find it satisfactory. The securities are all good
and give very little concern. I have put opposite the different
items of the annual income,

19,000 State Line & Sullivan R. R. Co. bonds, 6 . $1,140 00
2,000 Grand Rapids & Indiana fives,    .   .   100 00
136 shares the Commercial Bank of Phila.,   .   476 00
$5,000 temporary loan with collateral; has been five
per cent. Is six, .   .   .   .   .   300 00
$2,000 mortgage 2042 Woodstock street, Philadel-
phia, at 5 per cent., .   .   .   .   .   100 00
$9,043.79, being balance to your credit on books of
estate of James L. Claghorn, deceased,
upon which six per cent. has always been
allowed,   .   .   .   .   .   .   542 63

Aggregating,   .   .   .   .   .   .   . $2,658 63

" Of course you understand that when father's estate is finally closed the items to your credit will be turned over either in cash or securities. Considering the condition of affairs, do you think your funds have shrunk much, if any? State Line Bonds used to be seven per cent., but were reduced to six per cent. two years ago. Think first-class investment for the bonds sold at ten per cent. premium, but of course all things are depressed at present; but that makes no difference when one wants' to hold on."

On May 14, 1891, he again wrote:

"MY DEAR MRS. KELLER: Enclosed please find draft for $300. Will send you the balance early next week, which I presume will be satisfactory to you. I do not think it will be necessary for you to give any note, as I will charge it in your account in the estate, which I presume will be entirely satisfactory to you."

The acting executor, the son, admits that the statements in all three letters, of investments, purporting to be in Mrs. Keller's name and for her account, were false; the larger part of the securities were hypothecated for loans to the son; some of the investments were in the name of the father, with nothing to indicate Mrs. Keller's ownership. The uncontradicted testimony is that Mrs. Claghorn gave to her son a power of attorney to act for her, and that she concurred in all his acts in relation to the business of the estate. By the will of James L. Claghorn his wife and son were the sole beneficiaries of his

estate, and except as to household furniture which was directly bequeathed to the wife, the son was appointed trustee to pay to her the income of the estate during her life, then principal and income were to merge for his benefit.

It was not until the remittances stopped in 1894 that Mrs. Keller made inquiry as to her investments; she then discovered that the grossest deception had been practiced upon her, and demanded at law the accounting which is the subject of this litigation.   After citation, but before account filed, Mrs. Claghorn and her son resigned as executors, and the son as trustee, and Henry C. Davis was appointed in their stead.   He pleaded the statute of limitation as a bar to the claim of Mrs. Keller, in which plea he was joined by the bank, the remaining creditor. The court overruled the plea on three grounds: 1. That the payments kept up for more than seven years after the death of the testator were a distinct recognition of the debt which subsisted at his death, and equivalent to a promise to pay ; and, 2. As the executors themselves were the beneficiaries of the estate, and the benefit or indulgence or postponed payment accrued to them individually, under the authority of McWilliams's Appeal, 117 Pa. 111, they were estopped from interposing the bar of the statute.   3. That a fraud had been practiced upon Mrs. Keller by both the testator and his executors, by misrepresentation, and in concealing from her the fact that her securities had been misappropriated, which fraud she did not discover until the year before the account was filed ; therefore, the statute, as against her, commenced to run only from her discovery of the fraud.

We do not concur with the learned court below in the first and second reasons given for the decree.   As to the first, it is directly in conflict with all our authorities, from Fritz v. Thomas, 1 Wharton, 66, down to Light's Appeal, 136 Pa. 211.   All of them hold that the recognition of a debt barred by the statute by the personal representative is but a new promise, on which he must be sued personally ; he is not answerable in his representative capacity for any cause of action not created by the decedent himself.   If he revive the cause of action by a new promise, then the promise is essentially a new contract, which alone can be relied on to sustain the action.

As to the second reason, it would be sound if Mrs. Keller

were the only creditor, for the executors being the only bene-
ficiaries, they would then, on the principle of McWilliams's
Appeal, supra, relied on by the court below, be estopped; this,
because it would be inequitable to permit them to benefit per-
sonally by the fraud as against the party defrauded. McWil-
liams's Appeal assumes the creditor knew his rights under the
law, and was conscious of the peril from neglect to enforce
them within the six years, but as by the act of the legatees,
who alone were benefited, he deferred suit, they were estopped
from pleading the statute, as representatives of the estate.
There were no other creditors; the advantage accrued solely
to the legatees. If in this case Mrs. Keller knew immediately
after the death of testator that her securities had been misap-
propriated, the statute would have run against her as to other
creditors, even if by cajolery and promises the legatees had
induced her to defer suit. The rule in McWilliams's Appeal,
on such facts, could be invoked only to this extent; the bank
could plead the statute against her, and, under the facts, its
claim would then be paid in full; then, as to the balance of the
fund, the executors would be estopped from interposing the
bar of the statute against her, because as legatees, they had
caused her to delay pressing her claim for more than six years.

But we think the third reason amply vindicates the decree.
Putting aside the confidential relation and the fact that the
executors were the sole legatees, the statute, under the facts
found, does not bar her claim. Her money was not loaned; it
was received to be invested; the executors, repeatedly, in the
most explicit statements, represented to Mrs. Keller it was in-
vested, and she was informed of the special securities in her
name. If this had been true both father and son were mere
custodians of her property, which they were bound to turn over
to her on demand. She was not a mere contract creditor of
the estate; she had loaned no money: they were simply depos-
itaries of her funds for a special purpose, which purpose they
represented had been executed. True, her claim against the
estate, because of the fraud, had a legal existence during the
whole ten years, and the law required her to know this, if she
knew the fact that the securities had been appropriated; but,
the fraud was in the active, persistent efforts of the executors
to conceal the fact of misappropriation; in this they succeeded;

as to her, then, the statute commences to run only from the time she discovered the fact of misappropriation, for from that time alone did she know she must assume the attitude of the ordinary contract creditor. The specific securities were beyond the reach of the law; their proceeds had become part of the estate to be distributed. In this view, while the law abhors such conduct, it cannot be questioned the executors were acting in their representative capacity; that is, they used their official position as a cloak to defraud one creditor, and thereby swell the assets for all creditors and legatees. No other creditor can successfully interpose the statute as against her, because her claim against the estate dates only from her discovery of the fraud. Then, only, so far as concerned her, did her right accrue to proceed against the estate.

While the executor and trustee appealed from the decree of the court below, and the appeal was pending at the argument here, it was afterwards, on March 20, 1897, discontinued, so that the appellant now of record is "the Commercial National Bank." As our decree in the case of Keller's Appeal, opinion handed down herewith, settles the form of final decree on all the exceptions, we simply dismiss this appeal, costs to be paid by appellant.