## Freed's Estate.

*Statute of limitations—Waiver—Testamentary acknowledgment of debt identified by declaration to residuary legatee.*

1. Where a testator, who had borrowed money from his son, H., for which he had given him a written acknowledgment of indebtedness, directed in his will that H. should be paid 4 per cent. interest on all money borrowed from him, and subsequently told one of the residuary legatees that H. had the paper showing the amount of money that had been borrowed, which paper should be presented "if anything happened," and H. should get his money, the testimony of the residuary legatee is competent, as it was against his interest so to testify, and sufficiently identifies the debt acknowledged in the will to waive the bar of the statute of limitations.

*Beneficial societies—Death benefits distinguished from funeral benefits.*

2. Whether a benefit paid the widow of a deceased member of a fraternal beneficial society is a funeral benefit or a death benefit depends upon the constitution and by-laws of the society. Money paid as a funeral benefit is impressed with a trust for that purpose, and the estate of the deceased cannot be resorted to for payment of such expenses until the funeral benefits are exhausted.

Exceptions to adjudication. O. C. Phila. Co., April T., 1921, No. 67. The testator bequeathed the general residue to his widow and three sons.

*H. James Sautter,* for exceptant.

*Bronte Greenwood, Jr.,* and *Harry Clayton Reynolds* for Harry G. Freed, contra exceptions to allowance of Freed's claim.

*William P. B. Hansell,* contra exceptions as to funeral benefits.

THOMPSON, J., Dec. 21, 1921.—At the audit of the account of the executors under the will of J. Edwin Freed, deceased, who died Nov. 21, 1920, a claim was presented by his son, Harry G. Freed, for $342, with interest from respective dates at 4 per cent. to the date of decedent's death, and thereafter at 6 per cent. to date of payment, upon a paper signed by testator as follows:
1 D. & C.

Freed's Estate.

"Phila. Pa. Aug 31st 1913

"This is to certify that I have borrowed from my son Harry G. Freed various sums of money as follows. Interest 4 per cent.

Aug 25th 1909 . . . . . . . . . . $200.00
Sept 20th 1910 . . . . . . . . . .  28.00        J. EDWIN FREED."
Nov. 19th 1912 . . . . . . . . . .  24.00
Sept. 1st 1913 . . . . . . . . . . 100.00

The auditing judge held that sufficient facts were shown at the audit to suspend the running of the statute of limitations and allowed the claim, to which ruling exceptions have been filed.

Paragraph four of the will is as follows:

"My son Harry shall receive the sum of twenty five ($25.00) Dollars as compensation for his loyalty and financial aid when same was needed by me. He shall be paid 4 per cent. interest on all money loaned to me providing same is not paid back to him, and the interest is not paid at the time of my death."

The testimony of Wilson E. Freed, one of testator's sons and one of the executors, was had under objection, and he testified as follows: "Q. Did you at any time have any conversation with your father with reference to your brother, Harry G. Freed? A. About three months before his death he was at my house and said if anything happened to him, my brother Allison and myself should see after him. My father said: 'Harry has the paper showing the amount of money that has been borrowed,' and that paper shall be presented if anything happened and Harry shall get his money."

It is undoubtedly the law that, to take a case out of the operation of the statute of limitations, the acknowledgment must be clear, distinct and unequivocal. In Maniatakis's Estate, 258 Pa. 11, 15, it is said: "To be consistent with a promise to pay the debt, the acknowledgment must be such as indicates an intention to pay the debt existing at the time of the acknowledgment. The time of payment need not be immediate, but the intention to pay must be present."

It will be observed that the testator expressly directs, in paragraph four above quoted, that interest should be paid on his indebtedness to claimant, and this direction, being carried out, automatically removes the bar of the statute. "Payment of interest on a debt will take the debt out of the operation of the statute, or revive a debt where the bar is complete:" 25 Cyc., 1373. As was said by Ashman, J., in Pillion's Estate, 35 W. N. C. 68: "Where a testator directs the executor to pay his just debts, and immediately proceeds to enumerate them, it would seem that he intends that they shall be paid at his death, whenever that may happen, because, until that event, it will be impossible for the executor to obey him."

A general direction to pay debts would not include a debt barred by the statute: 40 Cyc., 2061. We might be persuaded to hold that, since testator directed interest to be paid claimant "on all money loaned to me providing same is not paid back to him," there is an implied direction to pay the principal if not paid at the time of testator's death; and, further, in paragraph eight of the will of testator, he directs that "the creditors if any shall be paid first," and in paragraph nine he says that, "after the indebtedness and the bequests are paid, the balance of the money," etc., which might be considered as a direction to pay the claim in question. A debt does not cease to become such, even though barred by the statute of limitations. Mr. Justice Mitchell, in Woods v. Irwin, 141 Pa. 278, 293, says: "A debt barred by the statute of limitations is still a debt, though the remedy upon it be suspended or gone.

Its force as an existing obligation, even though only moral, is such that a promise to pay is binding without other consideration. And the debtor may make such promise without regard to its effect upon other parties, even though creditors." This was a case where the executrix did not plead the statute of limitations and allowed a judgment to be recovered against her as such, and the same was attacked by other creditors on the ground of fraud; but it was held that the judgment was valid, although this doctrine seems to have been modified in Claghorn's Estate, 181 Pa. 600, and id., 181 Pa. 608.

However, in view of our allowing the claim at bar on other grounds, it is not necessary for us to hold that the will contains an implied direction to pay the debt. We are of opinion that the testator has expressly directed the payment of this debt, and while the provision in his will in respect to its payment does not specify the amount, we have a witness who testified that testator, shortly before his death, identified the debt by referring to the fact that his son had a paper showing the amount, and that the witness to whom testator made this statement is competent to testify appears from the fact that it was against his interest so to do. In Clarke's Estate, 13 Dist. R. 3, Judge Hawkins said the following: "The bar of the statute of limitations was conceded as respected compensation for services, and the allowance must, therefore, be limited to the last six years; but it has no application to the loan, for the reason that Mrs. Clarke admitted her liability within that time. The will contains a distinct acknowledgment of the existence of the debt, and the amount was made certain by reference to Mrs. Lloyd's recollection of the facts."

For the reasons above given, we are of opinion that testator made such an acknowledgment of his indebtedness to his son by his will, and identified by the testimony of the witness above referred to, as to take the case out of the operation of the statute of limitations, and that the action of the auditing judge in allowing said claim is correct.

Exceptions have also been filed to the action of the auditing judge in holding that the sum of $250 paid the widow by the Order of Independent Americans was paid to her as funeral benefits and not as benefits generally. The Order of Independent Americans of the State of Pennsylvania is what is known as a fraternal organization, and has a constitution and by-laws for the State and subordinate councils. Article 3, section 4, of the State organization, states that its purpose is to "establish a sick and funeral fund;" article 15, section 4, provides that the council to which the deceased belonged must provide "a sufficient sum to give the deceased brother decent burial, and assist the widow or dependent relative in such sum as the council by its constitution and by-laws may determine;" article 16, section 11, provides for the payment of $250 on the death of a brother as "a death benefit." The by-laws of Francisville Council No. 837, Order of Independent Americans, the subordinate council of which the decedent was a member, provides, in article 6, section 1, that the weekly dues of contributing members who are enrolled in the Funeral Benefit Association of the United States, Class A, shall be 21 cents. By article 7, section 3, upon the death of a member in good standing and included in Class A, after membership of 271 days or over, there shall be paid his widow or nearest dependent relative the sum of $250, and in the same section it is provided that the funeral benefits shall not be paid until received from the Funeral Benefit Association of which the council may be a member. It will thus be seen that the only payment that can be made to a widow of a deceased member is a funeral benefit.

We are of opinion that the auditing judge correctly interpreted the articles and sections above referred to as meaning that the $250 paid the widow of the

1 D. & C.

decedent was paid to her as a funeral benefit and in relief of those expenses incident to a death, and that the sum was, therefore, impressed with a trust for that purpose, and that the sum should be brought into the estate for general distribution. We have examined the constitution and by-laws of the State and subordinate councils, and can find no provision contained therein for a payment of benefits generally; the only payments referred to are payments of funeral benefits to those included in Classes A, and A + B, and the secretary of the subordinate lodge has testified that no payments are made by the subordinate lodge until they are received from the Funeral Benefit Association. It is doubtless the law that benefits such as those here involved are, under the constitutions and by-laws of the societies and organizations which pay them, intended to defray the funeral expenses of the deceased member, and that, so far as such benefits are necessary to defray such expenses, they are impressed with a trust for that purpose in the hands of whomever the society pays them to, and the estate of the deceased cannot be resorted to for payment of such expenses until the said benefits are first exhausted: Miller v. Wolf, 18 Lanc. Law Rev. 105; Martin's Estate, 2 Ches. Co. Reps. 47; Nixon's Estate, 6 W. N. C. 496; Berlin Beneficial Society v. March, 82 Pa. 166; Walter's Estate, 12 Dist. R. 767. The fact that the estate is solvent makes no difference: Miller v. Wolf, supra.

The exceptions filed to the payment to the widow of $100 by the Independent Order of Odd Fellows, as funeral benefits, were not pressed, and as the auditing judge allowed the widow to retain $50 paid her by the "Peg Leg" association, without impressing the same with a trust, $400 must necessarily be added to the balance for distribution and $350 thereof charged to the widow's share, and the ruling to that effect by the auditing judge is approved.

All exceptions filed to the adjudication are, therefore, dismissed and the adjudication is confirmed absolutely.