Estate of Charles B. WOLF, Charles S. WOLF, Frances G. Wolf, Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 12643.

United States Court of Appeals Third Circuit.

Argued Dec. 4, 1958.

Decided Feb. 20, 1959.

At his death on January 8, 1951, Charles B. Wolf was a resident of York County, Pennsylvania. He was survived by his wife, Frances G. Wolf, by whom he had four children, all living upon his demise: Frances Jane Wolf, now McCabe; Charles S. Wolf; Jessie C. Wolf, now Sherrill; and Mary Julia Wolf.

Subsequent to decedent's death, twenty-five demand notes were found in various envelopes in his safety deposit box. These notes had been executed by. decedent and made payable to either his wife or one of their four children.[1] They were issued to decedent's wife and children in exchange for dividend checks received by them and turned over to decedent for his own use. The face amount of each note corresponded to the amount of the dividend check turned over to decedent by the named payee.

Although Frances G. Wolf and her children were aware of the existence of the notes and were shown them on occasion, the notes were retained by decedent in his safe-deposit box. The notes relating to each individual were segregated in an envelope appropriately marked with the payee's name. Both decedent and his family looked upon these transactions as loans, although the payees did not receive any security or interest payments. The Tax Court found that the payees never made a demand on decedent for payment nor did they ever contemplate suit for payment.

Both Frances J. and Charles attained their majority more than six years prior

Albert G. Blakey, 3d, York, Pa. (Fisher, Ports, May & Beers, York, Pa., on the brief), for petitioners.

Carolyn R. Just, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

This petition for review of a decision of the Tax Court involves alleged deficiencies in the estate tax paid by the executors of the estate of Charles B. Wolf.

1. The following table shows the dates, payees, and face amounts of the notes:

| Date | Payee | Amount |
|---|---|---|
| August 14, 1941 | Frances G. | $ 1,000 |
| | Frances J. | 1,000 |
| | Charles S. | 1,000 |
| | Jessie | 1,000 |
| | Mary | 1,000 |
| March 12, 1943 | Frances J. | 250 |
| | Charles S. | 250 |
| | Jessie | 250 |
| | Mary | 250 |
| March 15, 1943 | Frances G. | 15,000 |
| | Frances J. | 15,000 |
| June 7, 1943 | Frances J. | 250 |
| | Charles S. | 250 |
| | Jessie | 250 |
| | Mary | 250 |
| August 31, 1943 | Frances J. | 250 |
| | Charles S. | 250 |
| | Jessie | 250 |
| | Mary | 250 |
| December 14, 1943 | Frances G. | 4,000 |
| | Frances J. | 4,000 |
| November 29, 1944 | Frances J. | 1,000 |
| | Charles S. | 1,000 |
| | Jessie | 1,000 |
| | Mary | 1,000 |

to decedent's death and served in the armed services during World War II. Frances J. was a member of the Women's Army Corps from February 1943 to November 1944, and Charles was a member of the United States Army from June or July 1943 until March 1946. Of the remaining two children, Mary was a minor at the time of her father's death, and Jessie had attained her majority less than six years prior thereto.

The executors paid the face amounts of the twenty-five notes on October 11, 1954, to the respective payees. They claimed a deduction from the gross estate equal to the face amounts of the notes and interest thereon accrued to the date of decedent's death.

The Tax Court concluded that the notes reflected bona fide debts of decedent. However, it held that the debts were barred by the Pennsylvania Statute of Limitations as to all the parties except Jessie and Mary, the two younger children, and therefore not "allowed" within the meaning of Section 812(b) (3) of the Internal Revenue Code of 1939.[2] It is from this decision that the appeal was taken.

 Section 812(b) (3) of the Internal Revenue Code of 1939 provides that the net estate "shall be determined * * * by deducting from the value of the gross estate * * * such amounts * * * for claims against the estate * * * *as are allowed by the laws of the jurisdiction* * * * under which the estate is being administered," and further that "The deduction * * * allowed in the case of claims against the estate * * * shall, when founded upon a promise or agreement, be limited to the extent that they were contracted *bona fide and for an adequate and full consideration in money or money's worth*

* * *." (Emphasis supplied.) Inasmuch as the deductibility of claims against the estate depends on their allowance by the jurisdiction in which the estate *is being administered, we must* examine Pennsylvania law.

 In Pennsylvania, a suit on a demand note is barred six years after execution. 12 Purdon's Pa.Stat.Ann. §§ 31, 36. However, it is well established that "A debt barred by the statute of limitations is still a debt, though the remedy upon it be suspended or gone. Its force as an existing obligation, even though only moral, is such that a promise to pay is binding without other consideration." Woods v. Irwin, 1891, 141 Pa. 278, 21 A. 603. That case additionally held that it was well settled that the executrix, if satisfied the claim is honest, is not bound to plead the statute of limitations. Also see Fritz v. Thomas, 1836, 1 Whart.Pa. 66; Ritter's Appeal, 1854, 23 Pa. 95. But the parties beneficially interested in the estate also have rights which have been fully recognized. In Kittera's Estate, 1851, 17 Pa. 416, it was held that where the fund was insufficient to pay all the debts of a decedent, each creditor has a right to oppose any other claimant by showing that his debt is barred by the statute of limitations, *regardless of the lack of action by the personal representative of the decedent.* In a case decided shortly thereafter, it was admitted that a *legatee, or other person interested* in an estate, has a right to interpose the bar of the statute of limitations against a debt claimed from the estate, although the executor should refuse to plead the statute. Hoch's Appeal, 1853, 21 Pa. 280. And see In re Yocum's Estate, 1913, 242 Pa. 82, 88 A. 919; In re Claghorn's Estate, 1897, 181 Pa. 608, 37 A. 921.[3] The rationale for the above

2. 26 U.S.C.A. (I.R.C.1939) § 812(b) (3).

3. There is a line of cases, however, starting with Woods v. Irwin, 1891, 141 Pa. 278, 21 A. 603 which holds that a creditor of an estate has no standing to have a judgment confessed by the executor or administrator opened by the court solely on the ground of the running of the

statute of limitations. But cf. Bates v. Cullum, 1894, 163 Pa. 234, 29 A. 870. These holdings do not seem to be reconcilable with the cases cited in the body of this opinion which hold that a creditor, legatee, or other party having an interest in the estate does have standing to raise the bar of the statute of limita-

cases was well stated in Ritter's Appeal, 23 Pa. at page 97:

"In Kittera's Estate, the right of the creditor to interpose was properly made to depend upon the question whether his interest was affected. That it would be affected where the fund on which he had a lien was not sufficient to pay all the persons claiming to be creditors, is clear. In such a case it is equally clear that he had a right to be heard in his endeavors to protect his interest. So, legatees or distributees may be interested to protect the estate from being exhausted by illegal claims, and consequently their right to plead the statute was fully recognized in Hoch's Appeal."

No appellate cases have been cited to us, nor have we found any that consider the right of the Commonwealth or the United States to raise the bar of the statute of limitations in order to preserve the size of the estate for inheritance or estate tax purposes. One Orphans' Court opinion [4] has considered the question, and it concluded that the Commonwealth did not have standing to raise the bar of the statute of limitations.[5] The Commonwealth's contention as to standing was based on its right to taxes under the provisions of the Act of May 6, 1887, P.L. 79, which was repealed by the present Transfer Inheritance Tax, 72 Purdon's Pa.Stat.Ann. § 2301 et seq. The decision is based upon the thesis that the statute only grants the state a right to taxes "upon the residue left for distribution after all just, as well as legally enforceable, debts of the decedent are paid * * *." 10 Pa.Dist. R. 538. Whether this opinion is in complete accord with the interpretation placed upon the same statute by the Supreme Court of Pennsylvania in In re Handley's Estate, 1897, 181 Pa. 339, 37 A. 587, is questionable. In the latter case it was stated, at page 588 of 37 A., that

"* * * If distribution is unduly delayed, the commonwealth, under section 15 of the act of 1887, may have a citation to the executors to file an account, or to show cause why the tax should not be paid. By this section, the commonwealth, as to the tax, is put upon the same footing as a *legatee or creditor*, with a right to enforce distribution at the proper time." (Emphasis supplied.)

Furthermore, the more recent cases interpreting the present Transfer Inheritance Tax lead us to the conclusion that the opinion rendered in McKee's Estate is not presently an accurate statement of the law of the Commonwealth. Justice Stern, speaking for a unanimous court in 1937, analyzed the nature of the Inheritance Tax in In re Tack's Estate, 1937, 325 Pa. 545, 191 A. 155, 156:

"The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the state has the right to declare an escheat of all the property of a decedent and therefore, as the price of allowing a legatee, devisee, or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. Whether this appropriation be designated an inheritance tax, an estate tax, a succession tax, a death duty, or otherwise howsoever, it is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it as in the case of a transmission of possession or title inter vivos, but an excise on the privilege of inheritance. It is really not a tax at all in the ordinary meaning of the word, but rather a *distributive share of the estate* which the state retains for itself. Its true nature is not changed by the fact that it is assessed and measured by the value of the property, or that

---

tions where the executor or administrator fails to do so, except on a purely procedural basis.

4. McKee's Estate, 1901, 10 Pa.Dist.R. 538.

it is paid by legatees and devisees in proportions allocated to their respective inheritances." (Emphasis supplied.)

That this right to a distributive share of the estate granted to the Commonwealth by statute gives it the right to object to the payment of claims barred by the statute of limitations appears to have been recognized in Lyken's Estate, 1945, 53 Pa.Dist. & Co.R. 66.

The basis found in the Pennsylvania cases for permitting creditors or legatees to raise the bar of the statute in order to protect their interests or distributive shares is equally applicable to the Commonwealth. Concerning many estates, the claims could completely defeat the government's tax unless it is allowed to protect its interest. On the other hand, a recognition that the Commonwealth has an interest that it can protect preserves an undiminished estate subject to taxation. We are satisfied that the present law of Pennsylvania grants such a right to the Commonwealth. That being the case, we can discern no rational distinction that would justify attributing such a right to the Commonwealth and denying the same to the Federal government in its efforts to collect its estate taxes.

■ The Pennsylvania cases are clear that even parties with standing to raise the bar of the statute, where the personal representative fails to do so, must act diligently and present their objections to the barred claim *at the audit*. It is too late to raise the bar of the statute of limitations on exceptions to the adjudication. In re Gill's Estate, 1920, 268 Pa. 500, 112 A. 80; Lyken's Estate, 1945, 53 Pa.Dist. & Co.R. 66.

■■ In the instant case, the facts as found by the Tax Court indicate that a number of the claims were barred by the statute of limitations. Petitioners do not dispute this fact. It is axiomatic that the allowance of deductions is a matter of legislative and statutory privi-

lege rather than right. Once it is shown that claims are barred by the statute of limitations, the burden of persuasion shifts to petitioners, and it is incumbent upon them to show that these claims are "allowed by the laws of the jurisdiction." Due to the nature of the Pennsylvania law which permits a party having standing to object to barred claims at the audit, it was necessary for the petitioners to show that these claims were allowed at audit. A careful reading of the record fails to disclose any such allowance. Indeed, petitioners' brief seems to indicate the contrary, where it states that, "the executors will be allowed a credit for these payments in their accounts to be filed before the Orphans' Court of York County, Pennsylvania." In light of the Pennsylvania law, petitioners have entirely failed to meet their burden of showing that these claims were or will be allowed by the laws of the jurisdiction in which the estate is being administered.

■ The Tax Court, although allowing deductions for the claims represented by those notes which were not barred by the statute of limitations due to the minority of the two younger children, denied a deduction for the remaining claims. Among the claims so denied were notes in favor of the two older children who served in the armed services during World War II. Petitioners assert that the effect of the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A.Appendix, § 501 et seq., on the running of the statute of limitations was not considered by the Tax Court and as a result its disallowance of certain claims was erroneous.

■ Section 205 of the Soldiers' and Sailors' Civil Relief Act, as amended,[6] provides for a tolling of statutes of limitations "by or against any person in military service" during his or her period of military duty. It applies whether or not the cause of action accrued prior to or during the period of service. Unlike Section 201,[7] which has been held to

---

6. 50 U.S.C.A.Appendix, § 525.

7. 50 U.S.C.A.Appendix, § 521, entitled "Stay of proceedings where military service affects conduct thereof."

grant to the courts discretionary authority to stay proceedings where military service affects the conduct thereof,[8] Section 205 is mandatory in nature and has been so interpreted.[9]

Inasmuch as the findings of fact made by the Tax Court concerning the military service rendered by the two older children are general in nature and fail to specify exact dates, the cause will be remanded to the Tax Court for a re-evaluation of the allowability of the claims in light of the applicability of Section 205 of the Soldiers' and Sailors' Civil Relief Act.

The judgment of the Tax Court will be affirmed in part and reversed in part with a remand for further proceedings in accordance with this opinion.

---

**8.** The cases cited by the government concern application of § 201: Lawther v. Lawther, 1945, 53 Pa.Dist. & Co.R. 280; Collins v. Bannerman, 1942, 46 Pa.Dist. & Co.R. 84; Craven v. Vought, 1941, 43 Pa.Dist. & Co.R. 482.

**9.** Bowles v. Dixie Cab Ass'n, D.C.1953, 113 F.Supp. 324; Warinner v. Nugent, 1951, 362 Mo. 233, 240 S.W.2d 941, 26 A.L.R.2d 278; First Nat. Bank of Hico v. English, Tex.Civ.App.1951, 240 S.W. 2d 503.