## APPEAL OF R. C. McWILLIAMS, ET AL.

FROM THE DECREE OF THE ORPHANS' COURT OF MONTOUR COUNTY.

Argued April 29, 1887—Decided October 3, 1887.

A testator devised all his real estate to his wife for the term of seven years, the rents and proceeds, except so much as might be necessary for her support, to be applied exclusively to the payment of his debts, and providing, that after the expiration of said term his executor should have his real estate appraised and sold and, after all his debts were paid, the balance should be divided between his sons and daughter designated. Held:

1. That the will worked a conversion of the realty from the death of the testator, and the act of February 24, 1834, P. L. 77, was not operative upon the claims of creditors.

2. That in such case where the enforcement of a creditor's claim was deferred for more than six years after the right accrued, under an arrangement between the creditor, the executor, the widow and certain residuary legatees, by which payment was postponed that other debts might be paid under the provisions of the will, the legatees, assenting and assisting, are estopped from interposing the bar of the statute against the creditor's claim on distribution.

3. Yorks' Appeal, 110 Pa. 69, distinguished.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT and GREEN, JJ.; PAXSON and CLARK, JJ., absent.

No. 118 January Term 1887, Sup. Ct.; court below, No. 15 May Term 1886, O. C.

In the court below the account of Robert Curry McWilliams, executor of the will of John McWilliams, was confirmed, and an auditor appointed to make distribution of the balance shown. The auditor, *Mr. James Scarlet*, made a report showing, so far as relates to the contention in this court, the finding of the facts following.

John McWilliams died on August 7, 1876, testate, leaving a widow and four children, among whom were Robert Curry Mc-Williams and John Woods McWilliams. The will of the decedent was admitted to probate on August 14, 1876 and letters thereon issued to Robert Curry McWilliams. The portions of the will relating to the contention are as follows:

Item Third. I give and bequeath unto my beloved wife, Margaret McWilliams, all my real estate for the term of seven years, the rents and proceeds to be applied to the payment of my debts, and is to be used in no other way except so much as may be necessary for her to live on, and I do hereby appoint my son, Robert C. McWilliams, to collect the rents of all the farms and pay the same over to my creditors, at which time my beloved wife, Margaret McWilliams, will relinquish the claim and take full possession of the brick house and the yearly rental of said farm as long as she remains my widow.

Item Fifth. I do order and direct that my executor shall and will within two years after my decease (that is after the expiration of the seven years) have all my estate praised and sold, and after all my debts is paid the balance to be equally divided between my daughter, Mary E. Kimble, and my sons, James C. McWilliams and Robert C. McWilliams and John Woods McWilliams, as soon as it can be consistently done.

Robert and Samuel Curry held two unsealed notes made by the decedent; one, dated April 1, 1868, for $3,180, payable to their order one year after date, and another dated April 1, 1874, for $2,078.44, payable to their order one day after date. Interest had been paid on the first note by the decedent himself to April 1, 1874, and afterwards to April 4, 1881, by his executor. The interest on the second note had been paid by the executor to April 1, 1882.

Statement of Facts.

Rebecca A. Simington held two unsealed notes made by the decedent; one dated February 9, 1872, for $400 payable to her order one day after date, and another of same date for $400 payable one day after date to the order of Harriet A. Simington, and assigned to Rebecca A. Simington by William Simington, administrator of the payee. The interest upon both these notes was paid by the executor to March 21, 1884.

Within two or three years after the death of the testator, there was an agreement made between Robert and James Curry and the executor, at the instance of the latter and assented to by the widow and certain children, by which these creditors agreed to postpone the payment of their notes except the annual interest thereon, until the other debts of the estate could be paid by the executor under and pursuant to the provisions of the will, which agreement was adhered to by these creditors. The annual interest on these notes was paid out of the proceeds of the land. With regard to the Simington notes no express agreement was shown, but credit was taken in the executor's first account, filed May 26, 1884, for interest paid on them, and no exceptions filed thereto by the parties in interest.

On April 2, 1877, R. C. McWilliams, the executor, and his two brothers, John Woods McWilliams and James C. McWilliams, joined in a judgment note to Robert and James Curry, for the amount of three years interest on their said two notes and a large sum of money beside, then borrowed by the executor from them to pay debts of the estate due to other persons; and the transaction of loan and interest adjustment had been proposed by the widow and requested by the parties signing the judgment note.

To May Term 1884, proceedings in partition were had in the Orphans' Court, and James C. McWilliams and R. C. McWilliams petitioned to take the real estate appraised under the provisions of the will allowing it; and on May 26, 1884, the court awarded tract No. 1 to James C. McWilliams at the valuation of $10,580, and tract No. 3 to R. C. McWilliams at the valuation of $20,224. Sixty per cent. of these sums was ordered to be paid in cash to the executor for the payment of debts, and as required by court the executor gave bonds in $36,900 conditioned for the proper application of the funds to

come into his hands, which bonds were approved by the court March 23, 1885.

The account of the executor under consideration was filed on November 20, 1885, confirmed December 21, 1885, showing a balance for distribution of $11,715.38. The debit side was made up of but two items, sixty per cent. on the valuation of purpart No. 1 taken by James C. McWilliams, and sixty per cent. on the valuation of purpart No. 3 taken by the account-ant, aggregating $18,482.

Objection was made on the part of legatees to the allowance of claim made upon the two notes of Robert and Samuel Curry, "because it being proven that John McWilliams died on August 7, 1876, and the fund being the proceeds of real estate, the claim was barred by the statute before it was converted into money. Neither would the payments made on account by the executor, nor would a promise to pay the debt, prevent the running of the statute; and that it was barred generally by the statute of limitations." To the claim made upon the two notes presented by Rebecca A. Simington, objection was made that the notes were barred by the statute of limitations.

The auditor under his finding of facts stated his conclusions of law as to claims in question:—

That the payments made upon the notes by the executor with the acquiescence and knowledge of parties in interest kept the Curry and Simington notes in full life.

That the agreement to postpone the payment of the Curry notes was one which the executor had power and authority under the will of John McWilliams to make, and was upon good consideration, for the benefit of the estate and binds the estate.

That the will of John McWilliams worked a conversion of the realty and created a special and active trust for the pay-ment of his debts and the benefit of his estate, that became operative and binding upon the executor and heirs by the assent of the creditors.

That the evidence establishes a seating of the claims in question upon the fund or special trust created by the will.

That it was clearly the intention of the testator that the statute of limitations should not operate during the continuance of the trust, or no such provisions could avail to hold his estate

together as the one contained in the will, to use the rent and proceeds for the term of seven years for the payment of his debts.

That the widow and executor accepted it as a trust for the payment of debts, treated it in their accounts as beyond and without the statute of limitations and that the heirs of the estate of John McWilliams and all interested under his will are estopped from setting up lapse of time as a bar to the allowance of claimants' demands.

That the demand made by the claimants upon the widow and executor and acknowledgement by them of the claims in the proceedings had in partition and elsewhere was the beginning of suit in the proper court having jurisdiction of the estate and they are estopped from setting up the statute of limitations; nor is it within the power of the beneficiaries to claim that the acts of the trustees under the will are not binding upon them, and that they can plead the statute where such demand is made and where through the acts of their trustees for their benefit creditors have agreed to postpone their claims. that the intention of the testator be carried out.

That the testator intended to and did clothe his executor, R. C. McWilliams, and the widow, with power to make contracts and adjustments with creditors that would bind his estate and heirs, otherwise the provisions of his will, looking forward to a time for the payment of debts extending beyond the period of six years, must have failed. The former was necessary and an incident of the trust and gave him authority beyond that of ordinary executors to make promises and payments which bound the estate of the testator.—

To a report allowing the Robert and Samuel Curry notes and the Rebecca A. Simington notes, with a distribution accordingly, James C. McWilliams, guardian, Margaret E. Longshore, W. C. Longshore, J. W. McWilliams and R. C. McWilliams, "heirs and legal representatives" of John McWilliams, deceased, excepted on the ground, inter alia, that the auditor should have held that the said notes were all barred by the statute of limitations. On argument the court, WM. ELWELL, P. J., confirmed the report of the auditor and decreed distribution as recommended.

Robert C. McWilliams and John Woods McWilliams then

took this appeal and specified that the court erred in not sustaining the exceptions to the report of the auditor, and further:

The court below erred in not holding that the claims of Robert and Samuel Curry and that of Rebecca A. Simington were barred by limitation under the act of 24th of February, 1834, § 24, because no action having been commenced, etc., within a period of five years after the death of the testator.

The auditor and court below erred in not holding that the claims of Robert and Samuel Curry, and that of Rebecca A. Simington were barred by limitation under the act of 27th of March, 1713, § 1, because no action had been commenced, etc., within the period of six years from the death of testator, and the meeting of the auditor.

*Mr. S. B. Boyer,* for the appellants:

It will be seen at a glance that seven years, four months and fourteen days passed by, between the date of the death of the testator and the conversion of the realty into money.

1. Did the language employed by the testator create a trust, or, in the language of the auditor, seat the claims in question upon the fund, or create a special trust or lien without limitation? We think not. The case at bar is much like Trinity Church v. Watson, 50 Pa. 518, in which the proposition maintained in the court below was, that a general charge of real estate with the payment of debts, created a testamentary lien unfettered by limitation, and subject only to the presumption of payment by lapse of time. But it was held that this position was unsupported by authority, while it was clearly contrary to the general doctrine of liens and to the policy of the state. This case was followed by Buffington v. Railroad Co., 74 Pa. 162. The clause in the will in that case is almost identical with the will in question. We do not assent to the proposition that the real estate was converted by the will, until an actual conversion was made by accepting it at the appraisement; but, assuming there was a conversion at the death of the testator, no action was brought within six years as provided by the act of March 27, 1713.

2. Are the claims of Robert and Samuel Curry and that of Rebecca A. Simington barred by that statute? The act of Feb-

ruary 24, 1834, limits the lien of debts of decedents, not secured by mortgage or judgments, to the end of five years after the decease of the debtor, unless an action be commenced or statement thereof filed. The act of March 27, 1713, provides for the limitation of personal actions, six years. And the payments made by the executor and his promises to pay, and the decree of the court that sixty per cent. of the valuation of the real estate was required for the payment of debts, did not prolong or extend the lien and save the claims from the bar of the statute: Fritz v. Thomas, 1 Wh. 66; Reynolds v. Hamilton, 7 W. 420; Man v. Warner, 4 Wh. 455; Steel v. Steel, 12 Pa. 64; Hoch's App., 21 Pa. 280; Shand's Est., 1 Pa. C. C. R. 600; Smith v. Carrol, 112 Pa. 390.

*Mr. W. J. Baldy* (with him *Mr. Chas. R. Buckalew* and *Mr. Isaac X. Grier*), for the appellees.

1. The findings of fact by an auditor will not be set aside unless for plain error or for reasons which would induce a court to set aside a verdict: Bedell's App., 87 Pa. 510; McConnell's App., 97 Pa. 31.

2. There can be little doubt as to the intention of the testator when the third clause of his will is read. But if there be any doubt or any uncertainty as to the intention to create an active, continuing trust by this clause, it is certainly removed when we read the fifth clause, for there the testator directs that his executor shall and must, within two years after his decease, that is, after the expiration of the seven years, have all his estate appraised and sold; a direction that his estate shall be held by his executor for a period not exceeding nine years, during which time he is to collect the rents and income, and pay it over to the creditors.

3. The payments made by the executor upon the notes from time to time, with or without the express assent of the widow and legatees, and his repeated promises to pay the notes from land proceeds, were not the ordinary payments and promises of an executor to a creditor, which will not under decisions of this court affect the running of the statute of limitations against a stale demand. Those payments and promises are, in themselves, evidence of a seating of the claim upon the trust created by the will; and when the assent of the creditors to

take their pay from the sources of payment provided by the will and during the time therein fixed, is shown, there can no question remain between the parties under the statute of limitations.

OPINION, MR. JUSTICE STERRETT:

Appellants' contention is that the Curry and Simington claims, to which part of the fund was awarded, were not entitled to participate in the distribution: (1) Because they had ceased to be liens on the land of which John McWilliams, the testator, died seized and from which the fund was realized; and (2) Because they were barred by the statute of limitations, more than six years from the maturity of the claims and death of the testator having elapsed before they were presented.

As to the first it is sufficient to say, as did the court below, that the fifth item of the will, in which testator directed all his estate to be " praised and sold " by his executors, etc., operated as a conversion of the land into personalty, and hence the limitation act of 1834 does not apply.

The second position is well taken, unless the provisions of the will and what was done in pursuance thereof exempt the claims in controversy from the rule established in Yorks' App., 110 Pa. 69. The learned auditor and court below came to the conclusion that they did, and in that we think there was no error.

The testator died seized of valuable real estate, consisting of several farms, but he was largely indebted. To provide for the liquidation of that indebtedness appears to have been the main object of the testamentary provisions referred to. In the third item of his will he devised all his real estate to his wife for seven years, but in the same connection he provided that the rents, issues and profits thereof, except so much as might be necessary for her support, should be collected by his son, one of appellants, whom he appointed executor, and applied exclusively to payment of his debts. This provision evidently contemplated an extension of time covering the period of seven years, at least by some of his creditors. It is true they were not bound to wait and accept payment in that manner; but if they accepted the terms and assented to an extension

of credit, which the auditor finds they did, neither heirs nor legatees who were parties to the arrangement can now be permitted to set up that indulgence as a statutory bar to such claims. The auditor finds as a fact that shortly after the death of the testator there was an understanding between the Curry claimants and the executor, to which the other appellant assented, that these creditors should postpone the payment of their notes, except the annual interest thereon, until the other debts of the estate could be paid by the executor under and pursuant to the provisions of the will; and that this agreement, assented to by appellants and for the benefit of the estate in which they were interested, was carried out in good faith. To this arrangement, the executor, who is one of these appellants, was a party, acting under the provisions of his father's will. In view of these and other facts found by the auditor, the defence to the claims in question, set up by appellants, is unconscionable and should not be permitted to prevail. They both enjoyed the benefit of the agreement to which one of them was actually a party, and to which the other was virtually a party, by assenting thereto and assisting to carry it out; and hence they are estopped from interposing the bar of the statute to the claims in question.

There is another sufficient answer to the position assumed by appellants. When the real estate was appraised under the provisions of the will, after the expiration of the seven years, R. Curry McWilliams, the executor and one of the appellants, and his brother J. C. McWilliams, each petitioned the Orphans' Court to award to them, respectively, portions of the real estate at the appraisement. That was accordingly done with notice to all the heirs and legatees and without objection from any of them; and, as part of the decree, and for the very purpose of carrying out the provisions of the will as to payment of testator's debts, the court ordered sixty per cent. of the valuation money to be paid to the executor for that purpose; and provided that before receiving the sixty per cent. the executor should give bond with approved security conditioned for the faithful application of the money. In March, 1885, the bond was given and security approved. That decree remains in full force and unappealed from. The money in court is part of the fund thus set apart for the payment of testator's

·debts, including the claims now in question.   As the auditor finds and concludes: "here is a solemn adjudication, seating these very debts upon the fund at the instance of all the parties, in interest, who are now here disputing these claims and interposing the statute of limitations."   This conclusion is warranted by the evidence and is a complete answer to appellants' contention.   It is unnecessary to refer to the authorities cited and relied on by the learned counsel for appellants.   They are inapplicable to the controlling facts of this case.

> Decree affirmed at costs of appellants and appeal dismissed.