## Ruetschlin's Estate.

*Decedents' estates—Contracts—Declaration of trust—Equitable assignments—Insolvent estates—Priority.*

1. At the audit of the account of the executors of an insolvent estate, claim was made for a preference of $12,500 by virtue of an agreement made between the decedent, and claimants' testator, whereby it was stipulated that "upon the sale of......the plot of ground situated" (no description) decedent would "give to" claimant's testator "one-half of the money which he shall receive as his portion of the proceeds" of such sale and that claimants' testator would not demand payment of a loan of $32,000 due him by decedent for a period of five years. It appeared that certain land, admittedly the land referred to in the agreement, had been sold by the executors for $25,000; that the land had been purchased by decedent with money loaned him by claimants' testator; that claimants' testator had loaned decedent other amounts in addition to the sum mentioned in the agreement at various times. There was no evidence that at the time of any particular loan, decedent agreed to grant claimants' testator an interest in the land, or that any money was given by claimants' testator to the decedent for the specific purpose of buying such land. Claimants contended that the agreement constituted a declaration of trust, or an equitable assignment of half of the proceeds to be realized from the sale of such land, and claimed a preference over general creditors. *Held,* the Orphans' Court did not err in decreeing that claimants were not entitled to a preference.

*Decedents' estates—Bonds—Mortgages—Equity—Estoppel.*

2. At the audit of an executor's account it appeared that decedent had given a bond to claimants conditioned for the payment of $10,000 as collateral to a mortgage; that the mortgage was foreclosed and the property purchased at sheriff's sale by claimants for $50. Claimants contended that they were entitled to recover the unpaid balance of the debt from the estate. It appeared that one of claimants had written a letter to one of the decedent's executors offering to purchase the mortgaged property for $500 "over and above the bond and mortgage," but that the offer was

withdrawn a few days later. Though it appeared that at a conference between the parties subsequent to the writing of the letter, the letter was not mentioned and though it did not appear that anyone present, except the writer, knew of the letter, the Orphans' Court found that those present left the conference with the distinct understanding that claimants would buy in the property in satisfaction of the debt, and concluded that claimants were estopped from claiming on the bond. At the bar of the court below claimants' attorney offered to surrender the property purchased under foreclosure, upon payment of the mortgage debt with interest. *Held,* that as a matter of law claimants were entitled to claim upon the bond, and that in view of the offer made at the bar of the court, the contention that claimants were estopped to assert the claim was without merit, and the decree was accordingly modified.

Argued April 2, 1914. Appeal, No. 375, Jan. T., 1913, by Henry I. Magee, James Magee and George W. Henson, Executors of the Will of Francis Magee, deceased, from the decree of O. C. Philadelphia Co., July T., 1912, No. 116, dismissing exceptions to adjudication in Estate of Henry Ruetschlin, Deceased. Before BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Decree modified.

Exceptions to adjudication. Before LAMORELLE, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions in an opinion by GUMMEY, J. The executors of the will of Francis Magee, deceased, appealed.

*Errors assigned* were in dismissing the exceptions.

. *Henry Spalding,* with him *William Y. Tripple* and *Alfred Moore,* for appellants.—By the agreement of November 1, 1909, Ruetschlin established a trust upon the fund which should arise from the sale of the land, and the fund became impressed with this trust upon its coming into the hands of the accountants: Clark v. Clark, 180 Pa. 186; Hanna v. Clark, 189 Pa. 321; Eshbach's Est., 197 Pa. 153; McAuley's Est., 184 Pa. 124.

The agreement of November 1, 1909, operated as an equitable assignment of one-half of the proceeds of the land: Moeser v. Schneider, 158 Pa. 412; East Lewisburg Lumber & Mfg. Co. v. Marsh, 91 Pa. 96; Wylie's App., 92 Pa. 196; Est. of John Keys, dec'd (Bell's Appeal), 137 Pa. 565; Riccard v. Prichard, 1 K. & J. 277.

The claim for the amount of the $10,000 bond should have been allowed: Wolfe's App., 110 Pa. 126; Bradley v. R. R. Co., 36 Pa. 141, 151; 27 Cyc. of Law & Prac., 1746, 1747, 1748; Mollenauer v. Smith, 51 Pa. Superior Ct. 517; Lomison v. Faust, 145 Pa. 8.

*Frederick J. Knaus,* and *Charles H. Edmunds,* with them *Ruby R. Vale* and *Conlen, Brinton & Acker,* for appellee.—The agreement of November 1, 1909, did not amount to a declaration of trust, or operate as an equitable assignment: Moyer v. Moyer, 10 Sadler 426.

The appellants are estopped by matters in pais from claiming upon the bond: Stayton v. Graham, 139 Pa. 1; Logan v. Gardner, 136 Pa. 588.

OPINION BY MR. JUSTICE MOSCHZISKER, May 22, 1914:

At the adjudication in the estate of Henry Ruetschlin, deceased, the executors of Francis Magee presented several claims; they contended for a preference to the extent of $12,500, by reason of a written agreement existing between their decedent and the one whose estate was under distribution.

By a paper dated November 1, 1909, executed by "Henry I. Magee, trustee for Francis Magee," and Henry Ruetschlin, it was stipulated that "Upon the sale of ......the plot of ground situated" (no description) Ruetschlin would "give to" Magee "one-half of all money which he (Ruetschlin) shall receive as his portion of the proceeds" of such sale; and Magee agreed not to require payment of "the loan of $32,000," due to him by Ruetschlin, for a period of five years, unless the ground was sold in the interim,—at the expiration of that time Magee to

have the "option" of calling in the loan, or, should the ground still remain unsold, "to renew the agreement" for a further period of five years.

The executors of Ruetschlin included in their account an item of $25,000, derived November 20, 1912, from the sale of a one-third interest in a lot of ground in West Philadelphia; they admitted that this property was the same as that "mapped out" on a certain blue-print attached to the written agreement between Magee and their decedent. Testimony was offered which showed that Ruetschlin died insolvent July 24, 1911, that early in June, 1911, a meeting was held between him and Henry I. Magee, at which time Ruetschlin acknowledged that the blue-print represented the ground referred to in the agreement, and further, that he had used money loaned to him by Magee to purchase his (Ruetschlin's) interest in this land. It appeared that Magee had from time to time advanced Ruetschlin other moneys, in addition to the amounts claimed at the adjudication and the $32,000 mentioned in the agreement; but there was no evidence to show what particular funds coming from Magee actually went into this West Philadelphia land; moreover, there was no proof that at the time of any particular loan, Ruetschlin then and there agreed to grant Magee an interest in the property in question, or that money was given by the latter to the former for the specific purpose of buying the land covered by the blueprint. So far as the evidence goes, it merely appears that Magee made loans to Ruetschlin for the latter's own purposes, that some of the money was used in the purchase of an interest in this real estate, and, long after the purchase was made, Ruetschlin agreed that, when he sold, he would give his creditor (Magee), one-half of the proceeds. It is not a case where one purchased land in his own name for another; no more is it a case where money was advanced for the specific purpose of a particular purchase, with the agreement at bar in view. The property was not sold by Ruetschlin in his lifetime; and

the agreement does not declare that he held it in any
manner or to any extent for the benefit of Magee, or even
that he would so hold one-half of the proceeds in the
event of a sale.    Finally, Ruetschlin in no respect ex-
pressly limited his right to sell, or personally to receive
the proceeds in the event of a sale.

Under the circumstances, we cannot sustain the ap-
pellants' contention that the written agreement consti-
tuted a declaration of trust or an equitable assignment.
What might have been determined had the question
arisen during the lifetime of Ruetschlin, it is not neces-
sary to decide; but, as between the several creditors of
Ruetschlin's insolvent estate, it is clear that this writing,
which was not of record, and was unknown to creditors
other than Magee, cannot be construed to give a prefer-
ence to his estate.    We have looked at the authorities
cited by both sides; but, on their facts, all of them are
distinguishable from the present case, although Wylie's
Appeal, 92 Pa. 196, is nearest in principle.    (Also see,
Wood's Estate, 243 Pa. 211, 215.)    It is clear the court
below did not err when it refused the preference claimed
by appellants.

The next matter for consideration arises out of a bond
conditioned for the payment of $10,000, dated May 31,
1911, and given by Ruetschlin to the three executors of
the estate of Magee as collateral to a mortgage on an-
other piece of real estate.    This mortgage was foreclosed,
and the property was purchased at sheriff's sale by the
Magee executors for $50.    It appears that one of these
executors wrote a letter to an executor of the Ruetschlin
estate, dated December 21, 1911, in which he stated that
the Magee Estate would purchase the mortgaged prop-
erty for $500 "over and above the bond and mortgage
now held by us."    But a few days later the writer of the
letter notified its recipient that counsel had advised him
he had no power to purchase real estate; and the offer
was withdrawn.    Shortly afterwards a conference was
held at which the attorney of the Magee executors met

one of the Ruetschlin executors and his counsel, with
some other persons, and discussed the question of the
foreclosure of the mortgage. We have read all the tesi-
mony in reference to this meeting, and were we sitting
as a chancellor, we should find that the attorney for the
Magee executors neither said nor did anything at that
time, or at the subsequent sheriff's sale, that estops his
clients from claiming on the bond now before us. Of
course, had the court below, after seeing and hearing the
witnesses, made specific findings of fact compelling à
contrary conclusion, we should hesitate to reverse; but
the learned auditing judge goes no further than to say
that, "the solution of the question involved is attended
with difficulties and, in view of the existence of the letter
written by one of the executors aforesaid, it is but rea-
sonable to believe that those present, with the exception
of Mr. Tripple (the attorney for the Magee executors)
left the conference with the distinct understanding that
Mr. Tripple would buy in the property in satisfaction of
the debt." Upon this view of the facts, the learned court
concluded that the appellants were estopped from claim-
ing on the bond; but we cannot concur in the conclusion.
It is clear that the epistle in question was written be-
fore the conference, and it was not even mentioned at
that time; in point of fact, so far as the appellants are
concerned, the testimony shows that neither the attor-
ney nor any of the executors of the Magee estate, other
than the writer of the letter, then knew of its existence.

As a matter of law, there can be no doubt about the
appellants' right to pursue their remedy on the bond
(Wolfe's Appeal, 110 Pa. 126; Lomison v. Faust, 145
Pa. 8; Mollenauer v. Smith, 51 Pa. Superior Ct. 517, per
RICE, J.), and in view of the specific offer' made at the
bar of the court below, by the attorney of the Magee
estate, to surrender the property purchased under fore-
closure, upon payment of the mortgage debt with inter-
est, and to "put the thing back into statu quo," so far as
possible, we are not impressed with the equity of the

position taken by the appellees; but however that may be, clear error was committed in the ruling that no valid claim could be made upon the bond.

The 1st, 2d, 3d and 4th assignments of error are over-ruled; the others, including the 8th (so far as it relates to the questions before us), are sustained. The record is remitted to the court below with directions to modify the final decree in accordance with the views here ex-pressed; one-half of the costs to be paid by the estate of Ruetschlin and the other half by the estate of Magee.