## Anderson v. Hamilton, Sheriff

*Sterling & Willing*, for plaintiff.

*Donnelly & Linton*, for defendant.

KALODNER, J., August 10, 1936.—This case arises upon a petition for writ of alternative mandamus to compel defendant sheriff to execute, deliver and record a deed granting premises 321 Roselyn Street, in the City of Philadelphia, to petitioner.

Petitioner was the holder of a certain bond, secured by a mortgage on the above premises. Upon default in the indebtedness according to the terms of the bond, petitioner entered judgment in the sum of $3,241.87 against the obligors under a warrant of attorney; a writ of fi. fa. was then issued and the mortgaged premises sold by the sheriff at public sale to petitioner, who was execution plaintiff. The bid was $50, and this sum was paid to the sheriff. Shortly thereafter petitioner delivered to the sheriff a deed to the above premises for execution. The deed had affixed to it a 5-cent Pennsylvania documentary stamp. The sheriff refused to execute the deed unless it had stamps to the amount of $1.65. Thereupon petitioner instituted this proceeding.

The facts are admitted. The question is narrow and involves an interpretation of a specific provision of the Act of May 16, 1935, P. L. 203 (as amended by the Act of June 22, 1935, P. L. 439, not pertinent here), known as The Documentary Stamp Tax Act.

Section 3 of The Documentary Stamp Tax Act requires that:

"Every person who makes, executes, issues, or delivers any document . . . shall be subject to pay : . . . a State tax at the rate of five cents (5c) for each one hundred dollars ($100.00), or fraction thereof, of the value represented by such document."

The question is not as to whether a sheriff's deed is within the purview of the act. The definition in the act of "document" brings the instrument here involved within its operation and petitioner so admits. The controversy is as to the value which the document represents and therefore as to what amount of stamps should be affixed thereto. The word "value" is given the following meaning in section 2 of the act:

"(2) In the case of any document granting . . . or otherwise conveying any land . . . the amount of the actual consideration therefor, exclusive of liens. . . . Provided, That where such document shall set forth a small or nominal consideration, the 'value' thereof shall be determined from the price set forth in, or actual consideration for, the contract of sale, or in the case of a gift, from the actual monetary worth of the property granted . . . or otherwise conveyed, which in either event shall not be less than the amount of the highest assessment of such lands, tenements, or hereditaments for local tax purposes."

The Department of Revenue adopted the following regulation V, 1, defining the basis of tax:

"In the event of a sale of real property, upon the foreclosure of a mortgage, by a sheriff, or by a United States Marshal, the stamps . . . shall be . . . in an amount to be computed either upon the price bid by the purchaser,

or the amount of the judgment under which the property was sold whichever sum shall be the higher, provided if the judgment is used, no amount of such judgment in excess of the value of the property conveyed shall be considered."

It was on the authority of the above regulation that the sheriff insisted upon the larger amount of documentary stamps. The petitioner insists that the regulation is contrary to the act in that it misinterprets the meaning of "value".

The difficulty in understanding the legislative intent arises with the proviso "where such document shall set forth a small or nominal consideration". This clause is susceptible of two interpretations: First, that it applies when the actual consideration, as referred to previously, involved in the transfer made by the document is relatively small; or second, that it applies when the actual consideration involved is not contained in the document, but a smaller one is substituted. Our opinion is that the proper meaning is the latter.

It has been suggested, with some degree of accuracy, that the act would be difficult or perhaps impossible of enforcement if the first meaning were taken since the words "small" and "nominal" are incapable of exact definition and, being relative terms, vary with the circumstances in each case. But a more forceful and persuasive reason is the language of the act following the disputed words. The act goes on to say that in the enumerated cases the " 'value' thereof shall be determined from the price set forth in, or actual consideration for, the contract of sale". This shows that the purpose of the proviso is to find the actual consideration as a basis for value. Realizing the difficulty of doing so when the documents do not set forth the true consideration, the assessment for local tax purposes is made a minimum. This acts as a protection against those who conceal the true consideration by withholding it from the document. This interpretation effectuates the intention of the legislature

to base the tax upon actual consideration, and in giving this interpretation we follow the general rule of ". . . examination of, and comparison of the doubtful words with, the context of the law": Endlich on Interpretation of Statutes 35, sec. 27, cited with approval in New York Life Ins. Co. v. Guaranty Corp., 321 Pa. 359.

Having determined that the proviso can be invoked only when the consideration set forth in the document is not the actual consideration, the question then presents itself as to what is the actual consideration for the transfer of a property bought by the mortgagee at a sheriff sale for the minimum bid of $50. Petitioner contends that the amount bid is the full consideration for the sale, while it is argued for defendant that the Deficiency Judgments Acts of January 17, 1934, P. L. 243, and July 1, 1935, P. L. 503, have made the "fair value" of the property purchased part of the consideration.

Before the passage of the Deficiency Judgments Acts the actual and full consideration for the transfer of the property by the sheriff was the amount bid. This has been established by the cases holding that the execution creditor is entitled to a deficiency judgment for the full amount over the sum bid at the sale: Lomison v. Faust, 145 Pa. 8 (1892); Ruetschlin's Estate, 245 Pa. 473 (1914); Mollenauer v. Smith, 51 Pa. Superior Ct. 517 (1912). And the rule is not affected by the inadequacy of the price bid as compared with the true value, even though the mortgagee is the purchaser: The Media Title & Trust Co. v. Kelly et al., 185 Pa. 131 (1898); Ellsworth et ux. v. Husband, 119 Pa. Superior Ct. 245 (1935). The case of Bugh's Estate, 95 Pa. Superior Ct. 29 (1928), is not contrary but merely illustrates the application of the Federal rule requiring the reduction of the deficiency by the value of the property bought in when the mortgagee makes a claim against the bankrupt mortgagor's estate.

The Deficiency Judgments Act of 1934 provides in section 1:

"That whenever any real property is sold on any execution on the foreclosure of any mortgage, or on a judgment entered on any obligations secured by mortgage, and the sum for which such property was sold is not sufficient to satisfy the debt, interest and costs, the plaintiff or use plaintiff shall, within six months after such sale, petition the court . . . to fix the fair value of the property sold.

"In the event that the fair value so determined is greater than the price for which the property was sold, the amount of such fair value shall be deducted from the amount of the judgment, interest and costs, and a deficiency judgment entered for the balance.

"If the plaintiff or use plaintiff shall fail to present such petition within six months after such sale, the prothonotary shall, upon application of the defendant or other party in interest, enter satisfaction of such judgment."

The Deficiency Judgments Act of 1935, a continuation of the former act, is more detailed but has the same general provisions. It adds the following:

"Section 1. Be it enacted, &c., That in all cases where a bond and mortgage, or any other obligation securing or guaranteeing the payment thereof, is or has been given for the same debt, the real property, bound by such bond and mortgage, shall first be proceeded against and sold on execution, and the amount of the deficiency judgment ascertained, as hereinafter provided, before any other real property of the mortgage debtor may be attached, levied on or sold for the debt secured by such bond and mortgage, and before any property, real or personal, of any other such person may be sold for the debt secured by such bond and mortgage."

The purpose clauses in the titles of the two acts read respectively:

"To protect the owners of mortgaged property during the present emergency by limiting the amount of deficiency judgments during a certain period."

"To protect the obligors or guarantors of bonds and mortgages, and owners of property affected thereby, and others . . . by restricting the right to proceed against certain property and persons; limiting the amount of deficiency judgments."

Under no construction of the language of either of the acts can it be concluded that they affect the consideration to be paid for properties purchased at sheriff sales. These acts were emergency measures designed to relieve oppressed mortgage debtors because of the economic disturbance and relate primarily to the entry of judgments and their amounts.

In Market Street National Bank et al. v. Huff et al., 319 Pa. 286 (1935), the court, in discussing the 1934 act, stated:

"The decision of the Supreme Court of the United States on the Minnesota Mortgage Moratorium Law . . . cited by appellants, has no bearing on the controversy in hand. It passes upon a moratorium law, not one covering the entry of a judgment."

See also Peters' Estate, 20 D. & C. 611 (O. C. of Philadelphia County, 1934).

An additional protection is offered by the Act of 1935 in that it requires a certain order of execution, i. e., against the mortgaged premises before any other real estate of the mortgagor, and before any property of other persons liable for the debt: Commercial Bldg. Assn. v. Steen et ux., 24 D. & C. 575 (C. P. 1 of Philadelphia County, 1935) ; Integrity Trust Co. v. Wilkinson, 24 D. & C. 549 (C. P. 3 of Philadelphia County, 1935) ; Shallcross et al., Receivers, v. North Branch-Sedgwick B. & L. Assn., 24 D. & C. 496 (C. P. 5 of Philadelphia County, 1935) ; Ridge-Allen B. & L. Assn. v. Leshefko, 24 D. & C. 703 (C. P. of Lehigh County, 1935).

From these cases it is quite evident that the Deficiency Judgments Acts operate by requiring a certain order of execution and by enabling the debtor to secure a reduction of the deficiency judgment against him. But the point to be noted is that the reduction of the deficiency

is a right which accrues *after* the sale of the mortgaged premises by the sheriff. This is clear from the wording of the acts and the decisions interpreting them. In Evans v. Provident Trust Co., 319 Pa. 50, 52 (1935), Chief Justice Frazer, quoting from the court below, said:

" 'As the terms of the act clearly state, it affects the rights of the parties after a sale on foreclosure proceedings.' "

In New York Life Ins. Co. v. Guaranty Corp., 22 D. & C. 407 (C. P. 2 of Philadelphia County, 1935), President Judge Stern said:

"The act obviously refers to a notice to be given after the sale of the real estate; indeed it refers entirely to proceedings to be taken after such sale."

This case was affirmed in 321 Pa. 359 (1936), the reasoning of the Supreme Court being slightly different from that of the court of common pleas but not disturbing the above quotation. See also, in accord with these cases, St. Charles B. & L. Assn. v. Hamilton et al., 319 Pa. 220 (1935); Commercial Bldg. Assn. v. Steen et ux., 24 D. & C. 575 (C. P. 1 of Philadelphia County, 1935); Integrity Trust Co., etc., v. Wilkinson, 24 D. & C. 549 (C. P. 3 of Philadelphia County, 1935); Montgomery Trust Co. v. Milnor, 25 D. & C. 465 (C. P. of Montgomery County, 1935).

It is thus apparent that the reduction of the deficiency is a matter distinct from the sale of the property. This can play no part in the actual consideration when the sale is not based on it; it is not a condition subsequent, and the sale must be completed before the statutes providing for reduction can even begin to operate.

That the sheriff sale is a distinct and separate process is shown by the decision of our Supreme Court in the case of St. Charles B. & L. Assn. v. Hamilton et al., supra. In this case the mortgaged premises were sold by the sheriff to the mortgagee on December 23, 1933. His deed was given on February 8, 1934. In the intervening January the 1934 Deficiency Judgments Act was passed and the mortgagor subsequently petitioned for a satisfaction

of the judgment because no appraisal was made. It was held that the act was inapplicable since the sale took place before the adoption of the act. In the course of the opinion the court discussed the effect upon the incidents of ownership of the acceptance of the bid by the sheriff:

"It is by no means true that a purchaser at a sheriff's sale gets none of the incidents of ownership until the deed is acknowledged. Indeed, it is almost a contradiction in terms to say that the words 'sale' and 'sold' relate to the time the deed is acknowledged. In Slater's App., 28 Pa. 169, it was held that the purchaser at the sheriff's sale prior to such acknowledgment gets an inceptive interest which may be bound by a judgment against him during this period . . . [the court here cites numerous examples, concluding with] Penna. S. V. R. Co. v. Cleary, 125 Pa. 442, that a purchaser at sheriff's sale acquires an inchoate title in the land by virtue of his bid and its acceptance by the sheriff. In all of these cases, and in many others which could be cited, the distinction is always made between the date of sale and the date of acknowledgment of the deed. The two incidents are never treated as one. In all of them the words 'sale' and 'sold' refer to the time when the property was knocked down by the sheriff."

The accrual of these rights to the buyer shows that he has practically everything he ever will have immediately when the property is knocked down to him by the sheriff for the amount of the bid. And the Deficiency Judgments Acts do not impose a condition that he must also reduce the deficiency before he can get absolute title, or that by virtue of purchasing the property the judgment is ipso facto reduced. The sheriff executes the deed, and the mortgagee buyer can dispose of the property as he sees fit so far as the Deficiency Judgments Acts are concerned.

The deficiency will be reduced only when the proper proceedings are brought at a subsequent time. Until such reduction the judgment continues a valid lien on the debtor's other property. Certainly these proceedings are

not connected with the transfer of title to the mortgaged premises.

Moreover, under the 1935 act the mortgage creditor is permitted to execute upon any personal property of the mortgagor: Commercial Bldg. Assn. v. Steen et ux., supra; Integrity Trust Co., etc., v. Wilkinson, supra; Shallcross et al., Receivers, v. North Branch-Sedgwick B. & L. Assn., supra; see also Evans v. Provident Trust Co., supra. Thus he may take sufficient personal property to reduce the judgment to a trifling sum and then foreclose on the realty and buy it in. There would be no deficiency to reduce and the acts would have no effect.

The conclusion is inescapable that the Deficiency Judgments Acts do not attempt to raise the consideration for property bought in by mortgagees at sheriff sales by making them pay "fair value"; they only seek to reduce resulting deficiencies against the mortgagors and use as a basis the fair value of the property over the proceeds at the sale. The legislature did not provide that where the fair value was greater than the amount of the judgment there should be a refund to the debtor; it was interested only in deficiency judgments, and not in sales of property.

It would seem that the purpose of the insertion of the provision as to "small or nominal consideration" was to take care of the prevailing practice of reciting in a deed a nominal consideration, usually one dollar, so as not to disclose for public record the actual consideration passing between parties to a conveyance. But the fact remains that the sum recited in a sheriff's deed is the price paid for the property by the successful bidder. It is the actual consideration for the conveyance by the sheriff, and there is no undisclosed consideration such as might exist in a voluntary conveyance made pursuant to a contract of sale. The latter is the situation within the intent of the proviso quoted above.

Petitioner's rule should be allowed and defendant sheriff be required to execute the deed to petitioner with a 5-cent documentary stamp tax affixed. An order will issue accordingly.