## Gibson Estate.

414

Argued April 19, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, KENWORTHEY and RENO, JJ. (HIRT, J., absent).

Reargument refused October 26, 1943.

*Edw. J. I. Gannon,* of *Hazlett, Gannon & Walter,* for appellant.

*Luther C. Braham,* with him *Edith G. Galbreath,* of *Galbreath & Braham,* and *Darrell L. Gregg,* for appellee.

OPINION BY RHODES, J., October 8, 1943:

This appeal involves the distribution of the proceeds of the sale of real estate in the hands of a trustee appointed by the court below to make sale thereof for

payment of a legacy to Jennie Negley under the last will and testament of Bracken Gibson, deceased. Jennie Negley has appealed from the decree of the court below dismissing exceptions and confirming the report of the auditor.

The appeal presents another phase of the estate which was before us in *Gibson's Estate,* 128 Pa. Superior Ct. 44, 193 A. 302. There we held that the disputed document was a will. By it Jennie Negley, appellant in the present case, was bequeathed $2,500. The document, according to our statement of the facts in *Gibson's Estate,* supra, page 47, "was delivered to Mrs. Negley in a sealed envelope at the time of its execution and she was directed to and did hold it until after the death of Bracken Gibson." The testator died on January 27, 1932. The document was offered for probate by appellant on January 25, 1933, two days before the expiration of one year from the testator's death; probate was refused by the register of wills; on February 4, 1933, the court below ordered the register to certify the dispute as to the purported will to the orphans' court; and on September 2, 1936, the register was directed to admit the will to probate. On July 15, 1937, we held that the writing was testamentary, and was entitled to be admitted to probate; and we affirmed the decree of the court below.

Testator's son, the appellee, had been appointed administrator on February 2, 1932. The estate, according to the appraisement, consisted of personal property valued at $288 and real estate appraised at $3,900. The personal property was insufficient to pay decedent's debts, cost of administration, and funeral expenses, and the administrator paid them out of his own funds. The sum thus paid by him amounted to $1,111.50, and included, inter alia, the principal and interest of two notes payable to Susan J. Penrose—one for $300 in which "Mrs. Jennie Negley was the obligor and the

said Bracken Gibson the co-maker with the said Mrs. Jennie Negley," and the other for $150 in which "Mrs. Jennie Negley was the obligor and her son, Carl Negley, and Bracken Gibson were co-makers with her thereon." Whether these sums were borrowed for the benefit of Jennie Negley or the testator does not appear. However, there is no dispute about the correctness of any of the items; and it is not questioned that they were paid by appellee out of his own moneys, and that his father's estate was legally liable therefor.

The auditor found, and his finding was sustained by the court below, "that Ira A. Gibson [appellee] paid the sum of $1,111.50 in administering the estate, advancing that amount of money from his own funds on the assumption that the entire estate was his, as the only heir of his father." It is asserted here, and not denied, that appellant never presented her claim for payment to the appellee until after the year had elapsed from the time of decedent's death; that although she presented the will for probate two days before the end of the year probate was refused by the register; that no prior notice of any kind was given to appellee of the existence of such a paper; and that no steps were taken to appeal from the action of the register until after the year had elapsed from the date of decedent's death. Appellee, as administrator, filed his first and final account on January 30, 1933, and it was on February 4, 1933, that the certification of the dispute as to the purported will was directed.

Appellant contends that the distribution to appellee is without legal basis because no action had been brought by appellee to continue the lien of any of the claims paid by him within one year after the death of Bracken Gibson.

It is true that appellee did not institute an action to preserve the lien of the debts which he had paid. The Fiduciaries Act of June 7, 1917, P. L. 447, §15 (a), as

amended, 20 PS §521, provides in part: "No debts of a decedent, including the cost of settlement of the estate and the funeral expenses of the decedent ...... shall remain a lien on the real estate of such decedent longer than one year after the decease of such debtor, unless within said period an action for the recovery thereof be brought against the executor or administrator of such decedent ......" See, also, section 5, 20 PS §355, and section 21(b), 20 PS §2006.

Ordinarily, a personal representative who uses his own funds to pay the debts of the decedent is not entitled to reimbursement out of the proceeds of the sale of decedent's real estate unless he brings an action within one year as prescribed by the statute. *Krick's Estate* 342 Pa. 212, 20 A. 2d 195; *Reel's Estate,* 272 Pa. 139, 141, 116 A. 109; *Bentley's Estate,* 196 Pa. 497, 46 A. 898; *Emerick's Estate,* 172 Pa. 191, 33 A. 550. But we are of the opinion that this rule is not applicable under the facts of the instant case. Statutes limiting the time within which suit must be brought to continue the lien of debts of a decedent are statutes of limitation and repose. *Brennan's Estate,* 277 Pa. 509, 511, 121 A. 321; *Higgins' Estate,* 325 Pa. 106, 111, 188 A. 831. But failure to establish a lien on the real estate in the manner required by the statute does not necessarily preclude allowance of all claims out of the proceeds thereof. *Clyde's Estate,* 329 Pa. 552, 558, 198 A. 640. Cf. *Nixon v. Nixon,* 329 Pa. 256, 260, 198 A. 154. In *Reel's Estate,* supra, 272 Pa. 139, 116 A. 109, it was held that where executors paid taxes, interest on mortgage, and a judgment, in order to preserve the estate, they were entitled to be reimbursed out of the proceeds of real estate, sold more than a year after testator's death, in the absence of sufficient personal assets, although they had taken no steps to establish a lien on the real estate. The application of equitable principles is no more desirable in providing for exoneration out of

real assets for funds advanced for preservation of the estate than to provide for similar payment for funds advanced by a fiduciary and heir in the settlement of an estate without complying with the statutory requirements to preserve the lien because of the fraud or equivalent conduct of a legatee claimant. In either case the court could have directed payment by an appropriate decree.

The orphans' court within its jurisdiction is a court of equity, and has full power as a chancellor to grant relief; and being a court of equity it is guided by the principles of equity, although its jurisdiction is special and derived entirely from statute. *Braunschweiger's Estate,* 322 Pa. 394, 397, 185 A. 753; *Boles' Estate,* 316 Pa. 179, 182, 173 A. 664. As said in *Williamson's Appeal,* 94 Pa. 231, at page 236: "This is a proceeding in the orphans' court, which for many purposes is clothed with equity powers. When the jurisdiction of the Orphans' Court has attached over a fund, it comprehends within its grasp all powers necessary to make distribution." In that case the administratrix without authority borrowed money for the benefit of the estate. The money went into the estate, and it was held that before the heirs could repudiate her act they must return the money borrowed.

Appellant had possession of the will of Bracken Gibson for nearly nine years prior to the testator's death. She failed to disclose her possession of this document for a year, lacking two days, after the testator's death. In the meantime she knew that appellee was in possession of the real estate, and that he had taken out letters of administration. She likewise must have known that appellee was the sole heir of the testator, as she had lived with Bracken Gibson and his wife, by whom she was reared and educated, from the time she was five years of age until she was 19, when she was married. She was not adopted but was treated as

a foster child. See *Gibson's Estate,* supra. Under these circumstances we think that she was estopped to object to the allowance of appellee's claims. So far as he knew he was the sole heir of his father, and he had no knowledge of the existence of a will. The filing of a cautionary suit would have been up to that time a vain and useless thing. The situation of which appellant now complains is due to her own inaction and silence. "If a man is silent when he ought to speak, equity will debar him from speaking when conscience requires him to be silent. Silence when there is a duty to speak is deemed equivalent to concealment": 10 R.C.L., Estoppel, §21, p. 693. A distributee who knowingly conceals his rights in an estate is estopped to assert his rights. 10 R.C.L., Estoppel, §127, p. 822. Appellant is therefore hardly in a position to object to the reimbursement of appellee, as her silence and concealment continued to mislead appellee down to the last possible moment; no court is so impotent as to be obliged to allow such conduct to succeed. See *Fitzgerald's Estate (No. 1),* 252 Pa. 568, 574, 97 A. 935.

In *McWilliams' Appeal,* 117 Pa. 111, 11 A. 383, objections were made to claims on the ground that they were not entitled to participate in distribution because they were barred by the statute of limitations, more than six years from the maturity of the claims and death of the testator having elapsed before they were presented. Although the statute there was one of limitation only, it was said (page 119) : "In view of these and other facts found by the auditor, the defense to the claims in question, set up by appellants, is unconscionable and should not be permitted to prevail. They both enjoyed the benefit of the agreement to which one of them was actually a party, and to which the other was virtually a party, by assenting thereto and assisting to carry it out; and hence they are estopped

from interposing the bar of the statute to the claims in question."

Likewise, in 37 C. J., Limitations of Actions, §44, p. 725, it is said: "But the prevailing rule is that the doctrine of equitable estoppel may in a proper case be invoked to prevent defendant from relying upon the statute of limitations, it being laid down as a general principle that, when a defendant electing to set up the statute of limitations has previously by deception or any violation of duty toward plaintiff, caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which the court will not allow him to hold."

Appellant not only had the opportunity, but it was her duty to act promptly under the circumstances. "An estoppel arises 'where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth' ": *New Jersey Suburban Water Co. v. Town of Harrison,* 3 A. 2d 623, at page 626.

We think, however, that the auditor erroneously allowed reimbursement to appellee for $109.59 which he paid out of his own funds for taxes levied for the year 1933 on the real property of the estate. The auditor said: "The will, which was later admitted to probate, did not devise the land, but only provided for the payment of a legacy of $2,500 which was held to be a charge on the land under the wills act. Thus, in spite of the will, Ira Gibson was the owner in fee simple of the land subject to the legacy as a charge on said land." Appellee being in possession when the taxes were levied and paid, this claim should not have been allowed.

There having been no valid objection interposed to the balance of appellee's claim, we think it proper that the disbursements were ratified and a refunding ordered under the facts disclosed.

The decree of the court below as modified is affirmed, and distribution is directed to be made accordingly. Costs to be paid as follows: By appellant four-fifths; by appellee one-fifth.