## AUERBACH v. CORN EXCHANGE NAT. BANK & TRUST CO., PHILADELPHIA.

### Civ. No. 3210.

District Court, E. D. Pennsylvania.
Dec. 30, 1943.

Edward N. Polisher, of Philadelphia, Pa., for plaintiff.

Albert M. Hoyt, Jr., of Philadelphia, Pa., for defendant.

KALODNER, District Judge.

This matter comes before me on plaintiff's motion for judgment on complaint and answer. The facts herein set forth are taken from the pleadings.

On February 24, 1933, the defendant as assignee of a mortgage on a property located at 314–16 South 50th Street, Philadelphia, upon default of payment after maturity, entered judgment against the plaintiff in the Common Pleas Court of Philadelphia County on the bond accompanying the mortgage and assessed damages in the sum of $32,555. On April 24, 1933, the plaintiff and defendant entered into an agreement pursuant to which the

plaintiff paid the defendant the sum of $5,000 on account of the principal of the mortgage, deposited certain bonds, and assigned a certain life insurance policy as additional security and the balance of the principal of the mortgage in the sum of $25,000 was extended for two years. The agreement provided: "* * * The party of the second part (plaintiff) covenants and agrees to pay the premiums on said policy of life insurance as the same shall become due and payable. In the event that he shall fail so to do or if he shall default in the performance of any of the terms and conditions of said bond and mortgage as modified hereby, the party of the first part (defendant), at its option, may surrender said policy of life insurance and receive the cash surrender value thereof, crediting the same against the principal and interest due on said bond and judgment, and/or in the event of any such default the party of the first part may sell, assign and deliver the whole or any part of the securities.... or any substitutes therefor or additions thereto, at any broker's board or at public or private sale, at the option of the party of the first part, at any time or times thereafter, without advertisement or notice to the party of the second part, and with the right in the party of the first part to become the purchaser thereof, at such sale or sales, absolutely freed and discharged of any equity of redemption and of all trusts and claims whatsoever, and thereupon to transfer, assign and deliver the securities sold and after deducting all legal and other costs, attorneys' fees and expenses of collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so made on account of the principal of said bond and judgment thereon, returning the overplus, if any, to the party of the second part."

On August 28, 1933, the plaintiff and defendant entered into another written agreement whereby the plaintiff agreed to satisfy the above-mentioned mortgage and judgment whereby the defendant agreed to satisfy the above-mentioned mortgage and judgment upon the execution and delivery by the plaintiff to the defendant of a new bond and mortgage in the principal sum of $25,000 and secured upon the same premises. This agreement provided that the life insurance policy and the bonds deposited as additional security under the prior agreement of April 24, 1933, should continue to be held by the defendant as additional security for the principal in the new bond and mortgage with the same rights upon default as given in the agreement of April 24, 1933.

On June 6, 1941, the plaintiff being in default on the new mortgage, the defendant entered judgment against him in the Court of Common Pleas No. 4 as of June Term, 1941, No. 658, and assessed damages in the sum of $24,223.72. On June 11, 1941, defendant issued a writ of fieri facias (real estate) under which the mortgaged premises were sold at public sale by the Sheriff of Philadelphia County to the defendant on July 7, 1941, for the sum of $95. On August 4, 1941, the Sheriff executed and delivered his deed poll for said premises to the defendant.

Meanwhile, on July 16, 1941, the Governor of Pennsylvania approved and made effective on the same day an Act of the Legislature commonly known as the Deficiency Judgment Act, P.L.1941, page 400, 12 P.S.Pa. § 2621.1 et seq., which required a plaintiff who sells real estate under a judgment for a price insufficient to satisfy the judgment, interest and costs, to file a petition to fix the fair market value of the real estate within six months from the date of the sale or the enactment of the law, whichever date is later.

On September 26, 1941, defendant sold the securities deposited under the aforesaid agreement at public sale which had been advertised in a newspaper of general circulation and *after notice had been given by the defendant and received by the plaintiff,* of the sale and the fact that the real estate which had been acquired by the defendant in the foreclosure proceedings had been sold by the defendant at a loss. The defendant itself purchased the securities at the public sale for the sum of $3,503.19 and resold them a few days later through a broker for the net sum of $3,783.07.

The plaintiff has now brought suit to recover from the defendant the value of the securities by reason of the fact that the defendant has never, within the statutory period or any other time, filed a petition to fix the fair value of the real estate in accordance with the Deficiency Judgment Act. The defendant in its answer sets forth that the amount realized from the sale of the real estate which it had acquired by the foreclosure, plus the amount realized from the sale of the securities (apparently the insurance policy was lapsed

and had no value) is less than the principal and interest due it by plaintiff and that plaintiff is estopped by failing to object to the sale of the securities and raising no question as to the validity of the defendant's action until it was too late for defendant to institute proceedings under the Deficiency Judgment Act.

Prior to the Deficiency Judgment Act of 1941 the rule in Pennsylvania was that the price at which real estate was sold at a Sheriff's sale in execution proceedings was conclusive between the parties as to its value, and established the amount of the deficiency owed by the obligor. Lomison v. Faust, 1892, 145 Pa. 8, 23 A. 377; In re Ruetschlin's Estate, 1914, 245 Pa. 473, 478, 91 A. 857; In re White's Estate, 1936, 322 Pa. 85, 185 A. 589; In re Emlen's Estate, 1939, 333 Pa. 238, 247, 4 A.2d 143; Mollenauer v. Smith, 1912, 51 Pa.Super. 517. In a great majority of cases such real estate was bought in by the creditor without competitive bidding for a nominal sum sufficient only to cover costs, and as a result the creditor became the owner of the real estate while the debtor still remained liable for the full amount of the debt. It was to remedy this obviously inequitable situation that the Pennsylvania Legislature passed a number of so-called Deficiency Judgment Acts, commencing with the Act of 1934, P. L. 243 and finally culminating in the present Act of 1941, P.L. 400. The three earlier Acts, to wit, the Act of 1934, P.L. 243, the Act of 1935, P.L. 503, and the Act of 1937, P.L. 2751, were held to be unconstitutional by the Pennsylvania appellate courts in the cases of Beaver County Building & Loan Association v. Winowich, 1936, 323 Pa. 483, 187 A. 481, 921; Shallcross v. Building & Loan Association, 1936, 123 Pa. Super. 593, 187 A. 819, and Pennsylvania Company v. Scott, 1938, 329 Pa. 534, 198 A. 115, respectively. It was not until the 1941 Act was sustained by the Pennsylvania Supreme Court in the cases of Fidelity-Philadelphia Trust Company v. Allen, 1941, 343 Pa. 428, 22 A.2d 896, and Pennsylvania Company v. Scott, 1942, 346 Pa. 13, 29 A. 2d 328, 144 A.L.R. 849, that Pennsylvania succeeded in establishing the fair and equitable system of requiring the creditor to credit the fair market value of the real estate bought in at sheriff's sale against the amount of the debt.

The relevant portions of the 1941 Deficiency Judgment Act are as follows:

Section 1. "Whenever any real property has heretofore been or is hereafter sold, directly or indirectly, to the plaintiff in execution proceedings and the price for which such property has been sold was or is not sufficient to satisfy the amount of the judgment, interest and costs and the plaintiff seeks to collect the balance due on said judgment, interest and costs, the plaintiff or plaintiffs shall petition the court having jurisdiction to fix the fair market value of the real property sold as aforesaid. * * *."

Section 2 provides for the contents of the petition; Sections 3, 4, 5 and 6 the procedure under the petition.

Section 7 provides: "The plaintiff or plaintiffs shall file all petitions in accordance with section one and section two of this act not later than six months after the sale of any real property: Provided, however, That, if the sale occurred prior to the effective date of this act, the plaintiff shall file such petition within six months after the effective date of this act. In the event no petition is filed within such period, the debtor, obligor, guarantor and any other person liable directly or indirectly to the plaintiff or plaintiffs for the payment of the debt shall be released and discharged of such liability to the plaintiff or plaintiffs."

Section 9 provides " * * * nothing in this act shall be construed to effect a release or discharge of any person otherwise than, nor to any greater extent than as herein expressly provided."

Section 10 provides that waivers or releases by a debtor, obligor or guarantor " * * * shall be absolutely void, unenforceable and of no effect."

It is obvious upon the reading of Section 1 that the plaintiff in execution proceedings on real estate must proceed to petition to fix the fair value *before* he "seeks to collect the balance due" on the judgment. The term "on said judgment" cannot be limited to "proceedings" (i.e. execution) on the judgment because the Act protects guarantors such as collateral bondsmen as well, and the proceedings against these collateral obligors might be pursued independently of the judgment against the primary obligor. I would unhesitatingly hold that the proper construction of the act must be that before the execution plaintiff can proceed to collect the balance against any person or from any source (other than the real

estate sold on the execution) he must comply with the act.

■ The mortgage obligation is merged in the judgment. See Restatement of the Law, Judgments, Sec. 47 (pages 181–182)—Work v. Prall, 1904, 26 Pa.Super. 104 and Biery v. Steckel, 1902, 19 Pa.Super. 396; and when the execution plaintiff "seeks to recover the balance due on said judgment", he must proceed in accordance with the provisions of the Deficiency Judgment Act.

■ However, I believe that the plaintiff in the case at bar is estopped. He had knowledge of the proposed sale of the securities which took place prior to the expiration of the six months' limitation and he offered no objection to the sale even though he was apprised that the amount realized from the sale of the real estate was insufficient to pay the debt in full. He has waited until the time limit under which the defendant could proceed under the Deficiency Judgment Act has expired and now complains for the first time.

The issue here is analogous to that in Re Gibson's Estate, 153 Pa.Super. 413, 419, 34 A.2d 159, decided October 8, 1943. In that case a decedent died, apparently intestate, and his son was appointed administrator. The estate consisted of personal property of value of $288 and real estate in the value of about $3,900. The son took possession of the decedent's property and paid the funeral bill of $1,111.50. It turned out that the decedent had made a will bequeathing his entire estate to a third person. This person had the will in his possession and disclosed the will a year, lacking two days, after testator's death with full knowledge at all times of the fact that the son had been appointed administrator, taken possession of the estate of the decedent and had paid the funeral bill. When the son sought reimbursement of the funeral bill from the real estate he was met with the limitation of the Fiduciaries Act, Act of June 7, 1917, P.L. 447, Sec. 15(a), as amended, 20 P.S. Pa. § 521, which provides in part: " * * * No debts of a decedent, including the cost of settlement of the estate and the funeral expenses of the decedent * * * shall remain a lien on the real estate of such decedent longer than one year after the decease of such debtor, unless within said period an action for the recovery thereof be brought against the executor or administrator of such decedent * * *."

The Superior Court of Pennsylvania held that notwithstanding the specific limitation as to the time within which the claimant for the funeral bill could bring action, the heir was estopped by reason of her knowledge and failure to act promptly under the circumstances.

Said the court, 153 Pa.Super. at page 419, 34 A.2d at page 162: " ' * * * If a man is silent when he ought to speak, equity will debar him from speaking when conscience requires him to be silent. Silence when there is a duty to speak is deemed equivalent to concealment'. 10 R.C.L., Estoppel, § 21, p. 693. * * * "

Again on page 420 of 153 Pa.Super., on page 162 of 34 A.2d the court stated:

" * * * Likewise, in 37 C.J., Limitations of Actions, § 44, p. 725, it is said: 'But the prevailing rule is that the doctrine of equitable estoppel may in a proper case be invoked to prevent defendant from relying upon the statute of limitations, it being laid down as a general principle that, when a defendant electing to set up the statute of limitations has previously by deception or any violation of duty toward plaintiff, caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which the court will not allow him to hold.'

"Appellant not only had the opportunity, but it was her duty, to act promptly under the circumstances. 'An estoppel arises "where a man is concluded and forbidden by law to speak against his own act or deed; yea, even though it is to say the truth." ' New Jersey Suburban Water Co. v. Town of Harrison, 122 N.J.L. 189, 3 A.2d 623, at page 626." (Emphasis supplied.)

It is true that Section 10 of the Deficiency Judgment Act forbids waivers, but we are here concerned with an estoppel. It is well recognized that an estoppel is different from a waiver. 21 Corpus Juris, page 1115, § 118; 31 C.J.S., Estoppel, § 61. In Gibson's Estate, supra, conduct similar to that of the plaintiff in the case at bar has been construed as constituting an estoppel. Furthermore, Section 9 of the Deficiency Judgment Act expressly provides that "nothing in this act shall be construed to effect a release or discharge of any person otherwise than, nor to a greater extent than as herein expressly provided."

For the reason stated, plaintiff's motion for judgment against the defendant on the pleadings is dismissed.