Estate of Bugh, Deceased, Appeal of Fickinger.

Argued October 5, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Daniel C. Donoghue,* and with him *Victor Frey* and *Augustus T. Ashton,* for appellants.—Under the law of Pennsylvania the sum for which a property is sold at a sheriff's sale, at mortgage foreclosure proceedings, which proceedings are free from error and fraud, is conclusive as to the value of the property as between the mortgagor and mortgages: Hiscock v. Varick Bank of New York, 206 U. S. 28; Thompson, 276 Fed. 313; Dix's Est., 176 Fed. 582; Winter's App., Davis Est., 174 Fed. 556; Cock v. Bailey, 146 Pa. 329; Lomison v. Faust, 145 Pa. 8; Mollenauer v. Smith, 51 Pa. Superior Ct. 517; Reutschlin's Est., 245 Pa. 473. The accountant is surchargeable for negligence in failing to rent the property: Lafferty's Estate, 4 D. & C. 689; Kline's Estate, 280 Pa. 41.

*Ralph B. Evans,* of *Evans, Bayard & Frick,* for appellee, cited: Chicago Board of Trade v. Johnson, 264 U. S. 1.

OPINION BY LINN, J., December 13, 1928:

Appellants in these two appeals complain that the court erred in not adequately surcharging the trustee for deficiency in both principal and income. Appellant in No. 82 is one of the remaindermen entitled to principal; appellant in No. 81 is administrator of the estate of the deceased life-tenant entitled to income. Appellee is trustee under the will of James L. Bugh.

The principal, $50,000, was awarded to appellee, trustee in 1900. The trust ended with the death of the life-tenant Julia L. Tressler Fickinger, March 2, 1927. The trustee then filed its first and final account, showing a balance of principal, $48,721.87 and some undistributed income. The shortage in principal and income, and the present controversy, result from an investment of $12,000 made by the trustee in 1906 in

the bond and mortgage of one, Brown, secured on 121 S. 41st Street, Philadelphia. On a creditor's petition filed in Philadelphia in October, 1916, Brown was declared bankrupt; debts of $62,568.03 were proved in the bankruptcy cause and his assets were distributed among creditors; in that proceeding, appellee made no claim, now conceding, however, that it should have done so.

The mortgagor being in default in December, 1916, appellee issued a sci-fa to foreclose, making Brown's trustee in bankruptcy a party; judgment for want of an affidavit of defense was taken and January 27, 1917, damages were assessed as follows:

| | |
|---|---:|
| Principal of the mortgage | $12,000.00 |
| Interest June 21, 1916 to Jan. 26, 1917 . | 439.97 |
| Attorney's Commissions | 373.08 |
| | $12,813.05 |

At the sheriff's sale the property was sold to the appellee for $50, and title was duly taken by deed of March 12, 1917; it may be added that there is no suggestion of fraud in the sale. April 29, 1919, the trustee sold the property for $12,000, which the court below found to be a fair price.

1. The claim to the first item of surcharge to principal made by appellant in No. 82, was based on the difference—$12,763.05—between the amount of the appellee's foreclosure judgment, $12,813.05, and $50 realized at the sale and credited on the judgment. As appellee had made no claim to participate with other creditors in the bankruptcy case, appellants sought to show in the Orphans' Court that if a claim for $12,-763.05 had been made by appellee in the bankruptcy proceeding, it would have been allowed and a dividend of $2,093.14, principal, would have been received, for which amount they asked that the trustee be surcharged. On the other hand, appellee contended that the amount of the allowable claim in bankruptcy was

the difference between the balance ($12,763.05) unpaid on the judgment and the value of the security which, though taken over at a nominal bid by the creditor, was subsequently sold for $12,000, credited to principal. The court below found that the rule of law applicable to such case in the federal court in the administration of the bankruptcy law limits the proof of claim to the difference between the judgment debt and the value of security acquired by the creditor. It was accordingly determined, since $12,000, the principal invested in the bond and mortgage was received for the property sold in 1919 and credited to principal, that if appellee had proved the claim in the bankruptcy proceeding, it would have been allowed in the sum of only $749.33, composed of the following undisputed items:

| | |
|---|---:|
| Cost of foreclosure | $439.33 |
| Cost of foreclosure | .50 |
| Taxes 1916 | 285.35 |
| Water rent 1916 | 24.15 |
| | $749.33 |

and that on that claim a dividend of $142.37 would have been payable to the appellee. A principal surcharge in that sum was therefore ordered.

Appellants insist that the court erred in stating the rule of law which the federal court applies in such case. The court below based its finding on decisions of the Circuit Court of Appeals for this circuit administering the bankruptcy act, notably an opinion written by the late Judge McPHERSON: In Re: Davis, 174 Fed. 556. Against this, appellants contend that the federal courts in this circuit erred in ascertaining the law of Pennsylvania on the subject and misapplied it and that the court below, instead of finding the federal law to be as stated, should have adopted what is said to be the state rule that (in the words of the brief) the "sum for which property is bid in at a mortgage

foreclosure sale [is] conclusive as to its value with respect to the legal rights of the obligee and mortgagee, as against the obligor and mortgagor," for which appellants cite Lomison v. Faust, 145 Pa. 8; Mollenauer v. Smith, 51 Pa. Superior Ct. 517; Reutschlin's Est., 245 Pa. 473. Though the decisions cited so declare the state law, we cannot accept the contention made on this record for two reasons. (1) The claim in dispute is not between mortgagor and mortgagee, as in those cases; here the court below was not ascertaining the rule applicable in a federal court in a proceeding between mortgagor and mortgagee, but the rule applicable in a dispute between a mortgagee and the creditors of the mortgagor in a distribution of assets pursuant to the provisions of the bankruptcy act,—a jurisdiction conferred by congress. (2) Judge McPHERSON is careful to say (p. 561) that the court does not decide that the federal court is bound to follow the rule which it was contended would apply in a controversy between mortgagor and mortgagee in the state court, and, in fact, proceeds to disregard the rule which the present appellants say is the law of the state. The federal court was administering the bankruptcy act, and until the rule applied by the Circuit Court of Appeals is reversed, it of course binds the state courts in proceedings in which the federal rule is a relevant fact. It may be observed that in Chicago Board of Trade v. Johnson, 264 U. S. 1, in which the question was whether a membership on the Board of Trade passed to the trustee in bankruptcy, (although by the state law such membership was not property subject to judicial sale), it was said: "Of course, where the bankrupt law deals with property rights which are regulated by the state law, the federal courts in bankruptcy will follow the state courts; but when the language of congress indicates a policy requiring a broader construction of the statute than the state decisions would give it, federal courts cannot be

concluded by them.'' Appellants however contend that as the trustee in bankruptcy was made a party to the mortgage foreclosure, the case differs from the federal court cases relied on in the court below, because in them the mortgagor's trustee in bankruptcy had not been made a party. They make an additional objection to the reduction of their claim which they base on the ground that, if filed for the amount ($12,-763.05) unpaid on the judgment the claim would have been proved prima facie, and that the court below could not assume that objection would be made by the bankrupt, the trustee or any creditor. The two objections are related and may be considered together. It does not appear that there was any defense, or that the trustee was advised that there was any defense, that might be made in the foreclosure proceeding; there was, therefore, nothing that it could set up in the foreclosure. It must be assumed here that in not appearing in the foreclosure proceeding he knew that by the rule applied by the federal court in bankruptcy cases, if a claim should subsequently be made by appellee for more than the value of the security taken over, that the proper time for him to make objection would be when the claim was presented in the bankruptcy proceeding, for it would then appear for the first time what claim the appellee would assert. Concerning the challenged assumption by the court below that objection would be made to the claim if presented in the bankruptcy case for the entire deficiency, we think it was proper to assume that the trustee would do his duty, which, even if no parties in interest objected (as permitted by section 57 (d) of the bankruptcy act) required him to examine all the proofs of claim and to make such objections (Remington on Bankruptcy, sections 1479, 1167) as would prevent payment of the claim which (as in this case) was not payable by the federal law.

The court also found that, in time to present the

claim in the bankruptcy case, there was a known loss of income in the sum of $1,689.90, on which the dividend in bankruptcy would have been $321.08, which the court ordered surcharged to income. Appellee makes no complaint of that.

What has been said in approval of the surcharge to principal of $142.37 disposes of the questions concerning surcharge to income not allowed. Little need be said concerning the claim of loss of $3,000 of principal in the sale of the premises for $12,000 in 1919; appellants contended that the value of the property was $15,000 and that there should be a surcharge of the difference. As there was evidence to support it, the finding that $12,000 was a fair price, stands.

In No. 81 another item is in dispute; between the time when the trustee took title, March, 1917 and the date of sale in June, 1919, the premises were vacant; a claim of $2,400 loss of income during that period was made. The court found from the evidence that, in the circumstances, it could not be said that the trustee acted unwisely in permitting the premises to be vacant while it was making efforts to sell; as there was evidence that they were more readily saleable vacant than if rented, we must accept the finding.

No. 81, decree affirmed, appellee for costs.

No. 82, decree affirmed, appellee for costs.