## In re All Wyoming Building & Loan Association. No. 2

*Herbert P. Sundheim,* for accountant.

*Morgan, Lewis & Bockius,* for exceptant.

MACNEILLE, J., April 1, 1938. — The Germantown Trust Company filed a claim based on an extension agreement executed by the association for $6,763.82, the full

amount of a deficiency judgment obtained by it as a result of foreclosure proceedings instituted by it on a first mortgage covering premises 5037 Torresdale Avenue, and the Secretary of Banking, in his account, disallowed most of this claim, and we are now considering claimant's exceptions to the disposition of its claim in the account.

Claimant became the holder of a first mortgage in the sum of $6,000, covering premises 5037 Torresdale Avenue, by assignment, and on February 14, 1929, entered into an extension agreement with the Broad & Wyoming Building & Loan Association, when the latter association was the owner of the premises, the extension agreement containing the usual provisions that the association would guarantee the payment of the principal, interest, and taxes. The Broad & Wyoming Building & Loan Association subsequently merged with the All Wyoming Building & Loan Association. On December 29, 1933, the latter association conveyed the mortgaged premises.

On May 3, 1937, after the Secretary of Banking took possession of the All Wyoming Building & Loan Association, claimant instituted foreclosure proceedings in the Court of Common Pleas No. 2, and on July 6, 1937, the property was bought at sheriff's sale by claimant for $50.

At the trial it was agreed that the fair market value of the property was $5,000, and claimant at the trial reduced the amount of its claim to $6,300, consisting of $6,000 principal and $300 attorney's fee.

It is the contention of claimant that it has a valid claim for $6,300, while the receiver contends that claimant must deduct from its deficiency judgment, as established by the sheriff's sale, the fair market value of the property, to wit, $5,000, and that it cannot recover the attorney's commission, and that its claim should therefore be limited to $1,000.

In United Security Trust Company Case, 321 Pa. 276, the "bankruptcy rule" was adopted in Pennsylvania in-

stead of the "equity rule", thereby establishing that a secured creditor, in presenting his claim in insolvency proceedings, must first deduct the value of his collateral.

A case very similar to the one here involved came before the Supreme Court in the case of Strauss v. W. H. Strauss & Co., Inc., et al., 328 Pa. 72, 77, which was decided on November 12, 1937. In that case, a Pennsylvania corporation became insolvent. It had as its largest creditor a bank which held two mortgages as collateral security. The bank foreclosed on one of its mortgages in the sum of $50,000 and bought the property at sheriff's sale for $83.64. The bank made a claim for the full amount of its deficiency judgment and, while the case was decided on other grounds, in the opinion the court used the following language:

"Even under the common law, unaffected by the Deficiency Judgment Act, the receivers, as representatives of the creditors of the insolvent corporation, could have shown the value of the collateral held by the bank without being bound by the price obtained at the sheriff's sale. It was pointed out in *Beaver County Building and Loan Association* v. *Winowich*, 323 Pa. 483, 490n, and cases there cited, that the price realized at such a sale was not conclusive of valuation as between the mortgagee and other creditors of the mortgagor or between the mortgagee and third persons generally."

It is apparent, therefore, that in the above decision it was specifically held that in a claim against an insolvent corporation, without regard to the deficiency act, the receivers, regardless of the price obtained at the sheriff's sale, are entitled to have deducted from the amount of the claim the value of the property bought at sheriff's sale.

Similarly, in the case of Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483, in which the Deficiency Judgment Act of January 17, 1934, P. L. 243, was held unconstitutional, and in which the Supreme Court reasserted the general principle as between the mortgagor and mortgagee that the price brought at the sheriff's sale

is conclusive of the value, yet in a footnote, at page 490, the court said:

"The rule is not necessarily applicable as between the mortgagee and other creditors of the mortgagor, or as between the mortgagee and third persons generally. See *Bugh's Estate*, 95 Pa. Superior Ct. 29, 34; *Weightman v. Union Trust Co.*, 208 Pa. 449."

A similar conclusion was reached by the Orphans' Court of Philadelphia County in Alexander's Estate, 31 D. & C. 17, in which case the claim of the Girard Trust Company on a collateral bond of the decedent for a deficiency judgment, where the claimant had bought the property for $50, and it was admitted that the property was worth more than the amount of the obligation, was rejected. And a similar conclusion was reached in the case of Elevated & Subway B. & L. Assn., 31 D. & C. 505.

While a different conclusion was reached by President Judge Davis of this court in the case of In re Luther A. Harr, etc., Receiver of Providence B. & L. Assn. of Phila., C. P. No. 3, June term, 1935, no. 3158, the opinion in that case was filed on October 28, 1937, before the decision of the Supreme Court in the case of Strauss v. W. H. Strauss & Co., Inc., et al., supra, was handed down.

It has also always been held in proceedings in bankruptcy that the claimant who has purchased the property at sheriff's sale for a nominal consideration, in which the claimant was mortgagee, must deduct the fair value of the property from the amount that was claimed: Bugh's Estate, 95 Pa. Superior Ct. 29.

We are, therefore, constrained to hold under the authority of the cases cited above, and more particularly the case of Strauss v. W. H. Strauss & Co., Inc., et al., supra, that since claimant is presenting a claim, not against the mortgagor but against the receiver of an insolvent association, claimant must deduct from the deficiency judgment the fair value of the property which it bought at sheriff's sale for a nominal consideration, and

that, therefore, the sum of $5,000 must be deducted from the amount of its claim.

There is no merit to the contention made on behalf of claimant that the association is not shown to be insolvent. An examination of the account indicates that the total assets of the association are somewhat over $26,000, and the liabilities to shareholders alone over $63,000. An association is insolvent when, after paying its general creditors, it cannot pay back its shareholders, dollar for dollar, the amount of their contributions: Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544, 552.

Nor is there any merit to claimant's contention that the Germantown Trust Company is not a secured creditor because the security it held did not belong to the association. As has been pointed out in the case of Alexander's Estate, supra, there is a difference in that regard between the law applicable to the situation in the bankruptcy courts and in our own courts. The Bankruptcy Act of July 1, 1898, 30 Stat. at L. 544, sec. 1, provides that only "a creditor who has security for his debt upon the property of the bankrupt" is required to deduct the value of his security, while our own Insolvency Act of June 4, 1901, P. L. 404, sec. 28, provides that "any collateral security held by any creditor for his debt shall be valued by said tribunal", and the value deducted from the claim.

It is apparent, therefore, that with reference to this question the decisions in the Federal courts involving the Bankruptcy Act are not in point as the Bankruptcy Act and our Insolvency Act are totally different in this particular. This distinction is also pointed out in the case of Elevated & Subway B. & L. Assn., supra.

With reference to the claim of $300 for attorney's commission, we find no language in the extension agreement which would make the association liable for this sum and, under those circumstances, we cannot allow that claim.

For the reasons indicated, the amount of the claim of the Germantown Trust Company is reduced to the sum of $1,000 and, as thus reduced, is allowed.

*Opinion sur exceptions*

MACNEILLE, J., June 7, 1938.—At the adjudication of the account of the Secretary of Banking, receiver of the All Wyoming Building & Loan Association, the claim of the Germantown Trust Company on an extension agreement was reduced from $6,300 to $1,000, and as thus reduced was allowed. Exceptions have been filed on behalf of the Germantown Trust Company to this action of the court, which are now before us for disposition.

We have carefully again reviewed the facts and applicable principles of law, and we do not see any reason for changing our prior adjudication in this matter.

All the material facts involved in this litigation are fully set forth in an opinion filed on April 1, 1938, and the applicable principles of law are therein set forth.

There has been called to our attention an opinion of President Judge Bok in the case of New York Life Ins. Co. v. Brith Achim B. & L. Assn., C. P. No. 5 of Philadelphia County, March term, 1936, no. 469. In that case the litigation involved a building and loan association which had not been taken over by the Secretary of Banking as receiver, but one that was in voluntary liquidation and, therefore, the legal principles are not necessarily the same as those involved in the litigation before this court.

As we pointed out in the prior opinion, a building and loan association is insolvent when, after paying its general creditors, it cannot pay back its stockholders dollar for dollar the amount of their contribution: Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544, 552. Under the Building and Loan Code of May 5, 1933, P. L. 457, when the Secretary of Banking takes possession of a building and loan association he not only liquidates it for the purpose of paying outside creditors, but also for the purpose of paying whatever balance is left to the stockholders, and the building and loan association itself is no longer in fact a party to any contested claim but the real parties are the claimants on the one hand and the creditors and stockholders of the building and loan association on the

other hand. The only practical difference between the position occupied by outside creditors and stockholders of an insolvent building and loan association is that outside creditors are paid first as a general rule before anything is paid to the shareholders.

It is, therefore, apparent, when in the case of Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483, and in the case of Strauss v. W. H. Strauss & Co., Inc., 328 Pa. 72, the Supreme Court limited the principle that the price brought at the sheriff's sale is conclusive of the value of the property to cases involving the mortgagor and mortgagee and excluded cases involving other creditors of the mortgagor and cases between the mortgagee and third persons generally, that the exception so stated certainly is broad enough to include stockholders of an insolvent building and loan asociation. In the first place, they undoubtedly would come under the term "creditors of the mortgagor", and if they do not come under that term they would certainly come under the still more inclusive term "mortgagee and third persons generally". Particularly is there no reason for limiting the broad terms of the exception as stated by the Supreme Court in a litigation like the one involved here, where a different construction would mean that the mortgagee would receive practically twice as much as is due him at the expense of the insolvent association.

In the instant case it is admitted that the value of the property is $5,000, and it is not unreasonable to require the mortgagee to allow as a credit the value of the property which he himself has placed upon it. As between the mortgagee and the solvent debtor the technical construction in favor of the mortgagee must be followed regardless of any distressing hardship upon the mortgagor, but here we have a debtor who is in distressing circumstances, who is insolvent; it is a building association unable to restore to its members the money which they have contributed to its treasury for the general purposes of the association. There is no hardship at all in requir-

ing the mortgagee to allow the credit, but there is a very great hardship if this insolvent association is obliged to deny funds to its contributors in order to give an amount to the mortgagee beyond its deserts.

It is the duty of a chancellor to see that a mortgagee is not denied its rights, and to aid it in making a complete recovery of its debt, interest, and costs. That being once accomplished, there is an equal duty to the debtor's creditors to see that its funds are not diverted in a manner that injures them and unduly benefits the mortgagee.

For the reasons indicated the exceptions of the Germantown Trust Company are dismissed.